It is settled by the decisions of the Supreme Court of the United States, that the State legislature has no power to impose a tax upon the bonds or securities mentioned in the foregoing statement, issued as a means of borrowing money upon the credit of the United States, whether such bonds and securities are held by individuals or corporations; and it is agreed in such statement that they are "exempt from assessment by the laws of congress."
It is a necessary result that such exemption cannot be evaded by any mere change of form or name in the law by which the tax is imposed. If, in fact, the tax is laid upon such bonds or securities, then; by whatever form of words the imposition is laid, it is illegal.
Hence, it is not lawful, for the purpose of State legislation, to assess the whole capital of a bank, at its value, or at its nominal amount, when such capital is invested, in whole or in part, in such securities. (2 Black. U.S. 620.) *Page 367 
And a tax imposed by a State upon a bank, at a valuation equal to the amount of its capital stock paid in, is a tax upon the property of the stock constituting its capital; and if such capital is invested in such securities, the tax is illegal, and the law imposing it is void. (2 Wallace's U.S. 200.)
The principle decided in these and other cases decided in the same court, is that whenever by State law a tax is laid upon property which consists of United States bonds exempt from taxation, then, in whatever form, or in whatever terms the law is expressed, it is void, and cannot be enforced.
I proceed to apply the rule thus stated to the case under consideration. The act in question provides as follows:
"The privileges and franchises granted by the legislature of this State to savings banks or institutions for savings, are hereby declared to be personal property, and liable to taxation as such, in the town or ward where they are located, to an amount not exceeding the gross sum of their surplus earned, and in the possession of said banks or institutions, and the officers of such institutions or banks may be examined on oath by assessors as to the amount of such surplus; and the property of such banks and institutions shall be liable to seizure and sale for the payment of all taxes assessed upon them for said privileges and franchises." (Laws of 1866, vol. 2, p. 1674.)
In declaring the privileges and franchises of a bank to be personal property, the legislature has adopted no novel principle of taxation. The powers and privileges which constitute the franchises of a corporation, are in a just sense property, and quite distinct and separate from the property which by the use of such franchises the corporation may acquire. They are so regarded by the law, and so regarded by common acceptation. And, although it has not heretofore been customary, in this State at least, to subject them to taxation, yet it must be conceded that it may be done if the legislature see fit so to enact.
It follows, that, if such taxation falls within the scope of legislative power, that power may also prescribe a rule, or test, of value. In the case stated, the legislature, leaving the *Page 368 
estimate to the assessors, would make the valuation depend upon all the circumstances which, irrespective of the amount of property which the corporation actually holds, give value to the privileges enjoyed. All franchises are not of equal value. One corporation may enjoy a monopoly, and another be subject to competition with rivals, thus being less valuable. In some instances, the value of the franchise would depend upon the nature of the business authorized, and the extent to which permission was given to multiply capital for its prosecution. Under such circumstances, it would be expected that the legislature would prescribe some equitable test or rule of valuation which should guide or control the estimate of the assessors in fixing the amount of the tax. It can hardly be denied that a fair measure of the value of the franchises of corporations would be the profits resulting from their use; and in adopting such a rule of estimate, no one could justly complain of its being unequal in its effects upon different corporations, or unjust in its general operation.
In the case before us, the test of value of the franchises is, not the amount of annual profits, but the rule is, the judgment of the assessors, limited to the amount of profits over and above the dividends of profits which the corporation has seen fit to declare and pay to its depositors.
These observations are made, not because the question, whether the operation of this statute is just and right, is open to judicial examination, but because they tend to prove that the act in question is, what it professes to be, a tax laid upon the franchises named in it, and not an indirect tax upon the securities held by the bank, and in that way attempting to avoid the principle of the decisions already quoted. Bad faith, or a design to evade the inhibitions implied in the Constitution of the United States or expressed in the acts of congress, are not to be presumed or to be imputed to the legislature, unless necessary construction compels it.
In this case the tax is declared in terms to be upon the franchises and privileges granted. If there are no surplus earnings, then there can be no tax. If there are such earnings, then it is reasonable to say that the privilege which *Page 369 
produced them is valuable, and may justly be regarded as property subject to the taxing power. This mode of limiting the taxing power, indicates strongly that the intention of the legislature was that it should not exceed a just and equitable assessment of the franchises and privileges granted, considered in reference to the pecuniary benefits and advantages resulting from their use.
It now becomes important to inquire, whether the assessment in the case now before us is affected by the fact that the banks have invested a portion of their moneys received from depositors, or the profits arising on such moneys, in bonds or securities of the United States which are exempt from taxation.
In my opinion, if the whole of the plaintiff's funds were so invested, it would not affect the validity of the act. The tax being levied upon the franchises and privileges of the corporation, the special use which it makes of its lawful powers is quite unimportant. Because, I repeat, that neither the aggregate property employed, nor the accumulated profits, are taxed. They are regarded as important only as they may furnish a just and fair measure of estimating the value of the property which produced them, in order that such value may form the basis of taxation.
I find no warrant for the assumption, that, in the cases now before us, the surplus earned and in the possession of the plaintiffs is invested in bonds or securities of the United States. The classification of their assets, which lays the foundation for it, does not result from the application of any rule of law, and we cannot judicially declare that the funds so invested are not the identical funds received from depositors. If it would affect the legal question, it should be shown, as matter of fact, that the surplus is specifically so invested.
It is true, that where a State tax is laid upon the property of an individual or a corporation, so much of their property as is invested in United States bonds is to be treated, for the purposes of assessment, as if it did not exist, but this rule can have no application to an assessment upon a franchise, where *Page 370 
a reference to property is made only to ascertain the value of the thing assessed.
It is, however, argued with great ingenuity and skill, that, inasmuch as the plaintiffs, among other powers given them, have the right to invest their money in United States bonds, their franchises and privileges cannot be taxed by the State. The power thus to invest their moneys, it is contended, is a franchise for lending to the United States, and therefore cannot be taxed, because such taxation would trench on the power of the United States to borrow. This is stretching the argument too far. It cannot be pretended that the State would violate any obligation resulting from the power of the United States to borrow money, if the law conferring the power upon the plaintiffs to invest their moneys in United States stocks and bonds were repealed. The State is under no obligation, express or implied, to legislate to enhance the credit of the general government, and should it adopt a system of legislation which indirectly produces such a result, its power of repeal cannot be doubted. The position, that a franchise granted by the bounty of the State is not taxable, because coupled with that franchise is the privilege of loaning money to the general government, is not more untenable than to argue, that, because such a franchise enhances the credit of the United States, therefore the legislature could not repeal the law granting the franchise without violating its constitutional obligations. Suppose the legislature had limited the amount in which the plaintiffs could invest its moneys in the securities of the United States, it will not be contended that such limitation would be void because it impaired the power of the United States to borrow money.
It must, therefore, be regarded as sound doctrine to hold that the State, in granting a franchise to a corporation, may limit the powers to be exercised under it, and annex conditions to its enjoyment, and make it contribute to the revenues of the State. If the grantee accepts the boon it must bear the burden. *Page 371 
In my opinion, the statute in question here is not obnoxious to the objection that it is in conflict with the power of the United States, nor is it to be regarded in any sense as indicating an unfriendly or hostile spirit.
As to the effect of the change made in the statute in 1867, it is sufficient to say that the assessment, imposition and confirmation of the tax, in 1866, made such tax a debt due to the city of Rochester, and the subsequent amendment of the act had no retroactive effect to change the rights of the parties.
The judgment should be affirmed, with costs.
All the judges concurring,
Judgment affirmed. *Page 372