# HOME INSURANCE COMPANY *v.* NEW YORK STATE.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 1.   Argued March 18, 19, 1890. — Decided April 7, 1890.

A tax which is imposed by a state statute upon " the corporate franchise or
   business " of all corporations incorporated u ⁻ler any law of the State or of
   any other State or country, and doing busine..₃ within the State, and which
   is measured by the extent of the dividends of the corporation in the
   current year, is a tax upon the right or privilege to be a corporation
   and to do business within the State in a corporate capacity, and is not a
   tax upon the privilege or franchise which, when incorporated, the com-
   pany may exercise; and, being thus construed, its imposition upon the
   dividends of the company does not violate the provisions of the statute
   exempting bonds of the United States from taxation, 12 Stat. 346, c. 33,
   § 2, although a portion of the dividends may be derived from interest on
   capital invested in such bonds.
Such a tax is not in conflict with the last clause of the first section of the
   Fourteenth Amendment to the Constitution of the United States declaring
   that no State shall deprive any person within its jurisdiction of the equal
   protection of the laws.
The validity of a state tax upon corporations created under its laws, or
   doing business within its territory, can in no way be dependent upon the
   mode which the State may deem fit to adopt in fixing the amount for any
   year which it will exact for the franchise.
*McCulloch* v. *Maryland*, 4 Wheat. 316, 436; *Weston* v. *City Council of
   Charleston*, 2 Pet. 449; *Henderson* v. *Mayor of New York*, 92 U. S. 259;
   and *Brown* v. *Maryland*, 12 Wheat. 419, in nowise conflict with the points
   decided in this case; and the court fully assents to those cases, and has
   no doubt of their correctness in any particular.

THIS case was first heard at October term, 1886. On the
15th of November, 1886, it was affirmed by a divided court, and
was reported in 119 U. S. 129, to which reference is made for
the reporter's statement of the case at that hearing, including
the text of the New York statute and the agreed case. On
the 7th of February, 1887, on motion of the counsel for the
plaintiff in error, that judgment was rescinded and annulled,
and the cause restored to its place on the docket, to be heard
by a full bench. 122 U. S. 636. With its present opinion the

court handed down a statement of the case now made, which is as follows:

The plaintiff in error, The Home Insurance Company of New York, is a corporation created under the laws of that State. Its capital stock during the year 1881 was three millions of dollars, divided into thirty thousand shares of the par value of one hundred dollars each, all fully paid. In the months of January and July of that year a dividend of $150,000 was declared by the company, making together ten per cent upon the par value of its capital stock. A portion of that capital stock was invested in bonds of the United States, amounting, when the dividend was declared in July, 1881, and also on the first of November of that year, to $1,940,000.

By an act of the legislature of New York, passed May 26, 1881, c. 361, amending a previous act providing for the taxation of certain corporations, joint stock companies and associations, it was declared that every corporation, joint stock company or association, then or thereafter incorporated under any law of the State, or of any other State or country, and doing business in the State, with certain designated exceptions not material in this case, should be subject to a tax upon "its corporate franchise or business," to be computed as follows: if its dividend or dividends made or declared during the year ending the first day of November amount to six per cent or more upon the par value of its capital stock, then the tax to be at the rate of one-quarter mill upon the capital stock for each one per cent of the dividends. A less rate is provided where there is no dividend, or a dividend less than six per cent and also where the corporation, company or association has more than one kind of capital stock — as, for instance, common and preferred stock — and upon one of them there is a dividend amounting to six or more per cent and upon the other there is no dividend or a dividend of less than six per cent. The purpose of the act is to fix the amount of the tax each year upon the franchise or business of the corporation by the extent of dividends upon its capital stock, or, where there are no dividends, according to the actual value of the capital stock during

the year. We are concerned in this case, however, only with the tax where the amount is computed by the extent of the dividends.

The tax payable by the Home Insurance Company, estimated according to its dividends, under the above law of the State, aggregated $7500. The company resisted its payment, assuming that the tax was in fact levied upon the capital stock of the company, and contending that there should be deducted from it a sum bearing the same ratio thereto that the amount invested in bonds of the United States bears to its capital stock, and that the law requiring a tax without such reduction is unconstitutional and void. An agreed case was accordingly made up embodying a statement of the facts, between the company and the attorney general of New York representing the State, and submitted to the Supreme Court of the State. That court gave judgment in favor of the State against the company, which on appeal to the Court of Appeals of the State was affirmed. 92 N. Y. 328. The judgment of the latter court, having been remitted to the Supreme Court and entered there, the case is brought to this court for review on writ of error.

Mr. *Benjamin H. Bristow*, for plaintiff in error, argued the case on his former brief, which is reported at length in 119 U. S. 133–143.

Mr. *Charles F. Tabor*, Attorney General of the State of New York, for defendant in error, argued the case on a brief which embodied the substance of the brief of his predecessor, Mr. *O'Brien*. 119 U. S. 143–147.

In addition to the cases cited under Point I in that brief, Mr. *Tabor* cited: *State Tax on Railway Gross Receipts*, 15 Wall. 284; *Webber* v. *Virginia*, 103 U. S. 344, 350; *Mercantile Bank* v. *New York*, 121 U. S. 138, 158; *Kittanning Coal Co.* v. *Commonwealth*, 79 Penn. St. 100; *Philadelphia Contributionship* v. *Commonwealth*, 98 Penn. St. 48; and, in addition to those cited under Point II: *Commonwealth* v. *Delaware Division Canal Co.*, 123 Penn. St. 494.

Under the first point in his brief (not in the former brief) —
that the decision of the Court of Appeals on the construction
of the constitution and statutes of New York will be fol-
lowed by this court — *Mr. Tabor* cited : *Elmwood* v. *Marcy*,
92 U. S. 289 ; *Fairfield* v. *Gallatin County*, 100 U. S. 47 ;
*Louisville, New Orleans & Texas Railway* v. *Mississippi*, 133
U. S. 587 ; *Hamilton Company* v. *Massachusetts*, 6 Wall. 632 ;
*Detroit City Railway* v. *Guthard*, 114 U. S. 133 ; *Phila-
delphia Fire Association* v. *New York*, 119 U. S. 110.

Under the fourth point in his brief (also not in the
former brief) — that this court has in many cases indicated
the restrictions, limitations and qualifications which are to be
applied to the words : " nor shall any State deny to any person
within its jurisdiction the equal protection of the laws," show-
ing clearly that they cannot be given the broad construction
sought for them under the decision in *San Mateo* v. *Southern
Pacific Railroad*, 13 Fed. Rep. 722 — *Mr. Tabor* cited : *Kirt-
land* v. *Hotchkiss*, 100 U. S. 491 ; *Memphis Gas Co.* v. *Shelby
County*, 109 U. S. 398 ; *Barbier* v. *Connolly*, 113 U. S. 27,
32 ; *Soon Hing* v. *Crowley*, 113 U. S. 703 ; *Missouri Pacific
Railroad* v. *Humes*, 115 U. S. 512 ; *Davenport Bank* v.
*Davenport*, 123 U. S. 83 ; *Missouri Railway Co.* v. *Mackey*,
127 U. S. 205 ; *Minneapolis Railway Co.* v. *Beckwith*, 129
U. S. 26 ; *Bank of Redemption* v. *Boston*, 125 U. S. 60.

On the rules governing the construction of statutes, he cited :
*Amy* v. *Watertown (No. 1)*, 130 U. S. 301 ; *Parsons* v. *Bed-
ford*, 3 Pet. 433 ; *Grenada County Supervisors* v. *Brogden*,
112 U. S. 261 ; *Presser* v. *Illinois*, 116 U. S. 252, 269 ;
*Ogden* v. *Saunders*, 12 Wheat. 213, 270.

Mr. Justice Field, after stating the case, delivered the
opinion of the court.

The contention of the plaintiff in error is that the tax in
question was levied upon its capital stock, and therefore
invalid so far as the bonds of the United States constitute a
part of that stock. If that contention were well founded
there would be no question as to the invalidity of the tax.

That the bonds or obligations of the United States for the payment of money cannot be the subject of taxation by a State is familiar law settled by numerous adjudications of this court. It is a tax upon the exercise of the power of Congress to borrow money : a tax which, if permitted, could be limited in amount only by the discretion of the State, and might therefore be carried to an extent impairing, if not destructive of, the efficiency of the power, to the serious detriment of the general government. As held in *McCulloch* v. *Maryland*, 4 Wheat. 316, 436, the States have no power by taxation to impede, burden or in any manner control the operation of the Constitution and laws enacted by Congress to carry into execution the powers vested in the general government; a doctrine which, applied in *Weston* v. *City Council of Charleston*, 2 Pet. 449, annulled a tax levied by the authority of a law of South Carolina on stock issued for loans to the United States.

Nor can this inhibition upon the States be evaded by any change in the mode or form of the taxation, provided the same result is effected — that is, an impediment is thereby interposed to the exercise of a power of the United States. That which cannot be accomplished directly cannot be accomplished indirectly. Through all such attempts the court will look to the end sought to be reached, and if that would trench upon a power of the government, the law creating it will be set aside or its enforcement restrained. Thus in *Henderson* v. *Mayor of New York*, 92 U. S. 259, 268, a statute of New York provided that the master or owner of any vessel bringing passengers from foreign ports into the port of New York should give a bond in the sum of $300 for each passenger landed, against his becoming a public charge for four years thereafter, or pay within twenty-four hours thereafter $150 for each passenger, and that, if neither bond was given nor payment made, a penalty of $500 for such failure would be incurred, which should be a lien upon the vessel. It was contended that the object of the requirement was not taxation but protection against pauperism, and therefore valid as within the police power. But the court said that in whatever language

the statute may be framed its purpose must be determined by
its reasonable and natural·effect, and judged by that criterion
the tax was either on the owners of the vessel for the right
of landing passengers or·upon the passengers themselves ; and
that, therefore, the statute was a regulation of commerce
and void.

. To the same purport is the familiar case of *Brown* v.
*Maryland*, 12 Wheat. 419, so often cited in this court, where
it was contended that ꞓ license tax required of an importer
to sell his goods, while held in bulk as imported, was a tax·
only upon his occupation. But the court observed that this
was only changing the form without varying the substance
of the tax, adding that " it is treating a prohibition which is
general as if it were confined to a particular mode of doing the
forbidden thing. ' All must perceive that a tax on the sale
of an article, imported only for sale, is a tax on the article
itself."

Looking now at the tax in this case upon the plaintiff · in
error, we are unable to perceive that it falls within the doc-
trines of any of the cases cited, to which we fully assent, not
doubting their correctness in any particular. It is not a tax
in terms upon the capital stock of the company, nor upon any
bonds of the United States composing a part of that stock.
The statute designates it a tax upon the " corporate franchise
or business " of the company, and reference is only made to
its capital stock and dividends for the purpose of determining
the amount of the tax to be exacted each year.

By the term " corporate franchise or business," as here used,
we understand is meant (not referring to corporations sole,
which are not usually created for commercial business) the
right or privilege given by the State to two or more persons
of being a corporation, that is, of doing business in a corporate
capacity, and not the privilege or franchise which, when in-
corporated, the company may exercise. ·The right or privilege
to be a corporation, or to do business as such body, is one gen-
erally deemed of value to the corporators, or it would not be
sought in such numbers as at present. It is a right or privi-
lege by which several individuals may unite themselves under

a common name and act as a single person, with a succession of members, without dissolution or suspension of business and with a limited individual liability. The granting of such right or privilege rests entirely in the discretion of the State, and, of course, when granted, may be accompanied with such conditions as its legislature may judge most befitting to its interests and policy. It may require, as a condition of the grant of the franchise, and also of its continued exercise, that the corporation pay a specific sum to the State each year, or month, or a specific portion of its gross receipts, or of the profits of its business, or a sum to be ascertained in any convenient mode which it may prescribe. The validity of the tax can in no way be dependent upon the mode which the State may deem fit to adopt in fixing the amount for any year which it will exact for the franchise. No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privileges it bestows. It may well seek in this way to increase its revenue to the extent to which it has been cut off by exemption of other property from taxation. As its revenues to meet its expenses are lessened in one direction, it may look to any other property as sources of revenue, which is not exempted from taxation. Its action in this matter is not the subject of judicial inquiry in a federal tribunal. As was said in *Delaware Railroad Tax Case*, 18 Wall. 206, 231: "The State may impose taxes upon the corporation as an entity existing under its laws, as well as upon the capital stock of the corporation or its separate corporate property. And the manner in which its value shall be assessed and the rate of taxation, however arbitrary or capricious, are mere matters of legislative discretion. It is not for us to suggest in any case that a more equitable mode of assessment or rate of taxation might be adopted than the one prescribed by the legislature of the State; our only concern is with the validity of the tax; all else lies beyond the domain of our jurisdiction." It is true, as said by this court in *California* v. *Pacific Railroad Co.*, 127 U. S. 1, 41, that the taxation of a corporate franchise has no limitation but the discretion of the taxing power, and its

value is not measured like that of property, but may be fixed at any sum that the legislature may choose; it may be arbitrarily laid, without any valuation put upon the franchise. If any hardship or oppression is created by the amount exacted, the remedy must be sought by appeal to the legislature of the State; it cannot be furnished by the federal tribunals.

The tax in the present case would not be affected if the nature of the property in which the whole capital stock is invested were changed and put into real property or bonds of New York, or of other States. From the very nature of the tax, being laid upon a franchise given by the State, and revocable at pleasure, it cannot be affected in any way by the character of the property in which its capital stock is invested. The power of the State over the corporate franchise and the conditions upon which it shall be exercised, is as ample and plenary in the one case as in the other.

In some States the franchises and privileges of a corporation are declared to be personal property. Such was the case in New York with reference to the privileges and franchises of savings banks. They were so declared by a law passed in 1866, and made liable to taxation to an amount not exceeding the gross sum of the surplus earned and in the possession of the banks. The law was sustained by the Court of Appeals of the State in *Monroe Savings Bank* v. *City of Rochester*, 37 N. Y. 365, 369, 370, although the bank had a portion of its property invested in United States bonds. In its opinion the court observed that in declaring the privileges and franchises of a bank to be personal property the legislature adopted no novel principle of taxation; that the powers and privileges which constitute the franchises of a corporation were in a just sense property, quite distinct and separate from the property which, by the use of such franchises, the corporation might acquire; that they might be subjected to taxation if the legislature saw fit so to enact; that such taxation being within the power of the legislature, it might prescribe a rule or test of their value; that all franchises were not of equal value, their value depending, in some instances, upon the nature of the business authorized, and the extent to which permis-

sion was given to multiply capital for its prosecution; and that the tax being upon the franchises and privileges, it was unimportant in what manner the property of the corporation was invested. And the court added: "It is true that where a state tax is laid upon the property of an individual or a corporation, so much of their property as is invested in United States bonds is to be treated, for the purposes of assessment, as if it did not exist, but this rule can have no application to an assessment upon a franchise, where a reference to property is made only to ascertain the value of the thing assessed." And again: "It must be regarded as a sound doctrine to hold that the State, in granting a franchise to a corporation, may limit the powers to be exercised under it and annex conditions to its enjoyment, and make it contribute to the revenues of the State. If the grantee accepts the boon it must bear the burden."

This doctrine of the taxability of the franchises of a corporation without reference to the character of the property in which its capital stock or its deposits are invested is sustained by the judgments in *Society for Savings* v. *Coite*, 6 Wall. 594, and *Provident Institution* v. *Massachusetts*, 6 Wall. 611, which were before this court at December Term, 1867. In the first of these cases it appeared that a law of Connecticut of 1863 provided that savings banks in that State should make an annual return to the controller of public accounts "of the total amounts of all deposits in them, respectively, on the first day of July in each successive year," and should pay to the treasurer of the State a sum equal to three-fourths of one per cent on the total amount of deposits in such banks on those days, and that the tax should be in lieu of all other taxes upon the banks or their deposits. On the first day of July, 1863, the Society for Savings, one of the banks, had invested over $500,-000 of its deposits in securities of the United States, which were declared by Congress to be exempted from taxation by state authority, whether held by individuals, corporations, or associations. 12 Stat. 346, c. 33, § 2. Upon the amount of its deposits thus invested the society refused to pay the sum equal to the prescribed percentage. In a suit brought by the treas-

urer of the State to recover the tax, the payment of which was thus rerused, the Supreme Court of Connecticut held that the tax was not on property but on the corporation as such. The case being brought here, the judgment was affirmed, this court holding that the tax was on the franchise of the corporation and not upon its property, and the fact that a part of the deposits was invested in securities of the United States did not exempt the society from the tax. Said the court: "Nothing can be more certain in legal decision than that the privileges and franchises of a private corporation, and all trades and avocations by which the citizens acquire a livelihood, may be taxed by a State for the support of the state government. Authority to that effect resides in the State independent of the federal government, and is wholly unaffected by the fact that the corporation or individual has or has not made investment in federal securities." pp. 606–607.

It was contended in that case that the deposits in the bank were subjected to taxation from the fact that the extent of the tax was determined by their amount. But the court said: "Reference is evidently made to the total amount of deposits on the day named, not as the subject matter for assessment, but as the basis for computing the tax required to be paid by the corporation defendants. They enjoy important privileges, and it is just that they should contribute to the public burdens. Views of the defendants are, that the sums required to be paid to the treasury of the State is a tax on the assets of the institution, but there is not a word in the provision which gives any satisfactory support to that proposition. Different modes of taxation are adopted in different States, and even in the same State at different periods of their history. Fixed sums are in some instances required to be annually paid into the treasury of the State, and in others a prescribed percentage is levied on the stock, assets or property owned or held by the corporation, while in others the sum required to be paid is left indefinite, to be ascertained in some mode by the amount of business which the corporation shall transact within a defined period. Experience shows that the latter mode is better calculated to effect justice among the corpora-

tions required to contribute to the public burdens than any other which has been devised, as its tendency is to graduate the required contribution to the value of the privileges granted and to the extent of their exercise. Existence of the power is beyond doubt, and it rests in the discretion of the legislature whether they will levy a fixed sum, or if not, to determine in what manner the amount shall be ascertained." p. 608.

In the second case mentioned, *Provident Institution* v. *Massachusetts,* it appeared that the statute of Massachusetts, passed in 1862, levying taxes on certain insurance companies and depositors in savings banks, provided that every institution for savings incorporated under its laws should pay to the commonwealth a tax of one-half of one per cent per annum on the amount of its deposits, to be assessed one-half of said annual tax on the average amount of its deposits for the six months preceding the 1st day of May, and the other half on the average amount of its deposits for the six months preceding the 1st day of November. The Provident Institution for Savings in that State was authorized to invest its deposits in securities of the United States. Its average amount of deposits for the six months preceding the 1st day of May, 1865, was over eight millions, of which over one million was invested in such securities. It paid all the taxes demanded except on the portion which was thus invested. Upon that it declined to pay the tax. In a suit brought by the commonwealth to recover the same, the Supreme Judicial Court of the State held that the tax was one on the franchise of the company and not on property, and therefore gave judgment for the commonwealth. The case being brought here, the judgment was affirmed. In deciding the case, this court said, referring to a section of the statute under which the tax was levied : "Deposits, as the word is employed in that section, are the sums received by the institution from depositors, without regard to the nature of the funds. They are not capital stock in any sense, nor are they even investments, as the word is there used, which simply means the sums received wholly irrespective of the disposition made of the same, or their market value." And speaking of the difference existing be-

tween taxes upon franchises and taxes upon property it said: "Franchise taxes are levied directly by an act of the legislature, and the corporations are required to pay the amount into the state treasury. They differ from property taxes as levied for state and municipal purposes in the basis prescribed for computing the amount, in the manner of assessment, and in the mode of collection;" and again, "Comparative valuation in assessing property taxes is the basis of computation in ascertaining the amount to be contributed by an individual, but the amount of a franchise tax depends upon the business transacted by the corporation and the extent to which they have exercised the privileges granted in their charter." pp. 631, 632.

The court also referred to a decision made by the Supreme Court of the State to the effect that the assessment imposed was to be regarded as an excise or duty on the privilege or franchise of the corporation, not as a tax on the moneys in its hands belonging to the depositors. It was the corporation, it said, that was to make the payment, and if it failed to do so it was liable not only to an action for the amount of the tax, but might also be enjoined from the future exercise of its franchise until all taxes should be fully paid. *Commonwealth* v. *People's Savings Bank*, 5 Allen, 428, 431.

And the court held that the valuation of the property had nothing to do with determining the amount of the tax, but that the amount depended on the average amount of deposits for the six months preceding the respective days named, and that there was no necessary relation between the average amount of the deposits and the amount of property owned by the institution; and, not being a property tax, it was to be considered as a franchise tax laid upon the corporation for the privileges conferred by its charter, which by all the authorities it was competent for the State to tax irrespective of what disposition the institution had made of its funds, or in what manner they had been invested.

In *Hamilton Company* v. *Massachusetts*, 6 Wall. 632, a statute of Massachusetts which required corporations having a capital stock divided into shares, to pay a tax of a certain per-

centage upon the excess of the market value of such stock over the value of its real estate and machinery, was sustained as a statute imposing a franchise tax, notwithstanding a portion of the property which went to make the excess of the market value consisted of securities of the United States; this court, however, placing its decision upon the fact that under the provisions of the state constitution and the practice under it the tax had been so considered by the highest tribunal of the State. This decision goes much farther than is necessary to sustain the judgment of the Court of Appeals of New York in the present case.

In this case we hold, as well upon general principles as upon the authority of the first two cases cited from 6th Wallace, that the tax for which the suit is brought is not a tax on the capital stock or property of the company, but upon its corporate franchise, and is not therefore subject to the objection stated by counsel, because a portion of its capital stock is invested in securities of the United States.

Nor is the objection tenable that the statute, in imposing such tax, conflicts with the last clause of the first section of the Fourteenth Amendment of the Constitution of the United States, declaring that no State shall deprive any person within its jurisdiction of the equal protection of the laws. It is conceded that corporations are persons within the meaning of this Amendment. It has been so decided by this court. *Pembina Cons. Silver Co.* v. *Pennsylvania*, 125 U. S. 181. But the amendment does not prevent the classification of property for taxation — subjecting one kind of property to one rate of taxation, and another kind of property to a different rate — distinguishing between franchises, licenses and privileges, and visible and tangible property, and between real and personal property. Nor does the amendment prohibit special legislation. Indeed, the greater part of all legislation is special, either in the extent to which it operates, or the objects sought to be obtained by it. And when such legislation applies to artificial bodies, it is not open to objection if all such bodies are treated alike under similar circumstances and conditions, in respect to the privileges conferred upon them and the liabili-

ties to which they are subjected. Under the statute of New York all corporations, joint stock companies and associations of the same kind are subjected to the same tax. There is the same rule applicable to all under the same conditions in determining the rate of taxation. There is no discrimination in favor of one against another of the same class. See *Barbier* v. *Connolly,* 113 U. S. 29, 32; *Soon Hing* v. *Crowley,* 113 U. S. 703, 709; *Missouri Pacific Railway* v. *Humes,* 115 U. S. 512, 523; *Missouri Pacific Railway* v. *Mackey,* 127 U. S. 205, 209; *Minneapolis Railway Co.* v. *Beckwith,* 129 U. S. 26, 32.

MR. JUSTICE MILLER (with whom concurred MR. JUSTICE HARLAN) dissenting.

MR. JUSTICE HARLAN and myself dissent from the judgment in this case, because we think that, notwithstanding the peculiar language of the statute of New York, the tax in controversy is, in effect, a tax upon bonds of the United States held by the insurance company.