MiNSHARR, J.
The plaintiffs base their right to relief upon the invalidity of the law under which the money paid by them, was exacted by the Secretary of State. The statute was passed February 12, 1889, and is an amendment of sec. 148a, Revised Statutes, fixing the fees which the Secretary of State is required to charge'for “official services.” It is divided into various paragraphs. The first fixes the fee for filing articles of incorporation of any corporation whose capital stock is over ten thousand dollars, at one-tenth of one per cent, upon the authorized capital of the company.
The third paragraph reads ás follows:
“For filing articles of- agreements of consolidation of corporations having a capital stock, the following fees shall be collected by the Secretary of State: Said articles of agreements of consolidation shall be treated as the articles of incorporation of the new consolidated corporations created by such articles or agreements of consolidation, and the fees for filing such articles or agreements of consolidation, *524 shall be the same in each case as is hereinbefore set forth for the filing of articles of incorporation of a corporation having the same amount of capital stock, as is provided for by the articles or agreements of consolidation for the new consolidated corporation, created by any such articles or agreement of consolidation; and in fixing the amount of such fees, no credit shall be allowed for fees previously paid by any of the constituent corporations, parties to such consolidation, but the same shall be determined solely by the amount of capital stock of the new corporation created by such articles or agreements of consolidation.”
The fees are required to be paid into the state treasury, and the secretary is prohibited from filing or recording such articles until the fees have been paid. '
The first objection to the statute is, that it imposes a tax, not authorized by the constitution of the state; and the second is, that, as to the plaintiffs, it imposes a burden upon inter-state commerce, and is, therefore, in violation of the constitution and laws of the United States.
1. In support of the first objection the second and fifth sections of the twelfth article of the constitution, are cited. We think it well settled that the second section simply relates to the taxation of property; and unless it can be shown that the sum exacted of the plaintiffs is such a tax, it has no application to the case. Much stress is placed upon language to be found in the opinions delivered in Exchange Bank v. Hines, 3 Ohio St. 1. The question there, however, was not as to whether the tax complained of was a tax on property, but whether the bank was entitled to deduct its debts from its moneys and credits. The decision of that question in no way involved the question as to the limit of the power of taxation conferred on the General Assembly by the general grant of legislative power. This question arose and was fully considered in the subsequent case of Baker v. The City of Cincinnati, 11 Ohio St. 534. It was there held that the provision of the constitution requiring all property to be taxed by a uniform rule, was simply a limitation on that mode of taxation, and does not necessarily exclude taxation upon that which is not property, nor *525 cover the whole ground within the limits of the taxing power; and that “If there be a species of taxation, or a subject matter of taxation, not embraced in that section, there is nothing in it by which they are prohibited or excluded.” The learned judge, delivering the opinion, then proceeded to show, that the taxing power is embraced, in the general grant of legislative power, and'is as ample, except where restrained by express provisions, as the object and purposes of the state government. The doctrine of this case has never been questioned as a sound exposition of the constitution on the subject of taxation, and has since been followed in numerous cases: Gas-light Co v. The State, 18 Ohio St. 237; Telegraph Co. v Mayer, 28 Id. 521; Adler v. Whitbeck, 44 Id. 565; Anderson v. Brewster, Id. 585; Marmet v. State, 45 Id. 68.
The recent decision in Railway Company v. State, is not in conflict with these cases. There the tax was upon property, levied by its miles in length, and hence not permissible under the provision of the constitution requiring all taxes on property to be levied by a uniform rule according to its true value in money. Whether the sum required by this statute for filing articles of incorporation be termed a fee, a tax or an assessment, is, we think, immaterial, for it is clear that it is not a tax on property. The filing and record of such articles is simply an authority or license to the persons filing them to form a corporation, and the sum paid therefor is the consideration demanded and paid the state for the grant of the right to be a .corporation. We fail to perceive anything in the principles of government or sound policy, that should forbid the state from making such an exaction, even for the purposes of general revenue. The franchise is valuable to the corporators, or, it is fair to assume, it would not be sought; and that the burdens of government are greatly increased by the formation of corporations, is daily seen in the business of the courts and the police establishment of the state.. It is further claimed that the exaction made by the statute violates that principle of equality that should underlie all taxation. That this principle should not be disregarded is clear; but perfect equal *526 ity is not attainable in any system of taxation. This, however, is equal in the sense that it applies to the formation of all incorporated companies, and is imposed according to the amount of the capital of each; and in this respect it is neither unequal nor unusual. Cooley Const. Eim. 608. The fact that it does not apply to companies already formed, does not make it unequal. If that were so then a change in any fee bill, or rate of charges, would be open to the same objection. The law operates upon the future, and its equality must be determined by the future and not the past.
It is also claimed, that the statute is void because it does not state the object for which the tax is imposed, as required by section 5, of article 12, of the constitution. It may be questioned whether this section has any application to the case. Baker v. Cincinnati, 11 Ohio St. 544. But, if it does, the objection is met by the provisions oí section 181a, Revised Statutes, that “all money paid into the state treasury, the disposition of which is not otherwise provided for by law, shall be credited by the Auditor of State to the general revenue fund.” It is not necessary that the object should be stated in the very statute imposing the tax; it is sufficient, we apprehend, if the object distinctly appear from the statute read in connection with some other provision found elsewhere in the statutes of the state. And, if the raising of a fund for general revenue purposes,, had been expressed in section 148a as amended, the purpose of the exaction would, have been no more definitely stated, than it is by reading that section in connection with section 181a.
We now inquire whether the statute is a restraint upon inter-state commerce, The Wabash Railroad Company as consolidated, embracing a system of roads located in Ohio, Michigan, Indiana, Illinois, and Missouri. The powe'r to regulate commerce between the states, belongs without doubt to the Congress of the United States; the states cannot interfere with or regulate it in any way. But the duty of the states in respect to such commerce -is passive and not active. No state is under any federal obligation to *527 furnish highways, nor to create agencies of any kind, for the purpose of faciliating inter-state commerce. The grant of the right to be a corporation is within the sovereign discretion of the state, and cannot be controlled by any other power, state or federal. As it may create or withhold such franchises at its pleasure, it may grant them upon such conditions as best suit its own notions of convenience and policy. Hence the state violates no federal Euty toward non-residents, whether corporate or natural persons, in refusing them corporate franchises or in making an exaction for the grant of the same, simply because such persons may have the control of a system of railways used in inter-state commerce. “The right or privilege,” says Justice Fibrd, “ to be a corporation, or to do business as s(uch body, is one generally deemed of value to the corporators, or it would not be sought in such numbers as at present. It is a right or privilege by which several individuals may unite themselves under a common name, and act as a single person, with a succession of members, without dissolution or suspension of business and with a limited individual liability. The granting of such right or privilege rests entirely in the discretion of the state, and, of course, when granted, may be accompanied with such conditions as its legislature may judge most befitting to its interests and policy. It may require, as a condition of the grant of the franchise, and also of its continued exercise, that the corporation pay a specific sum to thé state each year, or month, or a specific portion of its gross receipts, or of the profits of its business, or a sum to be ascertained in any convenient mode which it may prescribe.” Insurance Co. v. New York, 134, U. S. 599. And so, in Monroe Savings Bank v. Rochester, 37 N. Y. 365, it is said, “It must be régarded as sound doctrine to hold that the state, in granting a franchise to a corporation, may limit the powers to be exercised under it, and annex conditions to its enjoyment, and make it contribute to the revenues of the state. If the grantee accepts' the boon it must, bear the burden. ”
*528 The fee required to be paid for the filing of such articles, can, in no proper sense, be said to be a tax upon the business of commerce .between the states. No commodity is taxed directly or indirectly; and the business of the Wabash system is in no way hindered or embarrassed. It is not required to become a consolidated company under the laws of Ohio; nor is the transaction of its business made to depend upon its filing such articles and becoming a corporation. It can continue its business with the same freedom in the state, whether j.t incorporates or not under its laws. That the franchise of being a corporation under the laws of this state would be fruitful of advantages to those who own and operate the Wabash system, may well be inferred from the fact that they are anxious to obtain it. And the state is in no way averse to making the grant; it simply requires that its terms be complied with; and, as we have shown, that it is under no federal obligation to make such grant, there is no ground upon which they can, as we see, object to the terms.
The further claim is made that, by filing the articles of agreement of consolidation of the companies composing the Wabash system, no “new corporation” is created; and, therefore, the provisions of section 148a, as amended February 12, 1889, do not apply to them; that this section only applies where all the companies entering into the consolidation are Ohio companies. If this «were so, then the plaintiffs should not have presented their articles to the Secretary of State to be filed and recorded. But we are of the opinion that it is not so, and that a new company is formed in the one case as well as in the other. Referring to the Revised Statutes on the subject of “consolidation,” it will be observed that section 3379 authorizes the consolidation of Ohio companies and that the next authorizes the consolidation of a company in this state with a company in an adjoining state. The next section, 3381, provides how the consolidation is to be effected, and applies without distinction to either case. It is then provided by section 3382, that when iMta^^ement is made and perfected, and the same, or a copy filed with the Secretary of State, “the several *529 companies parties thereto shall be deemed and taken to be one company, possessing within this state all the rights, privileges and franchises, of a railroad company.” And by section 3384 it is provided that, upon the election of the directors of the consolidated company, all and singular the rights, privileges, franchises and property of the companies who are parties to, the agreement, shall be transferred to and vested in the “ new company without furthur act or deed.” The result is that by consolidation, whether between Ohio companies or between an Ohio company and companies of another state, a new company is formed by the extinguishment of the old ones. And it has been so determined in a number of cases. Shields v. Ohio, 95 U. S. 324; Compton v. Railway Co. 45 Ohio St. 592, 615; Lee v. Sturges, 46 Id. 163, 169.
In the subsequent sections the company formed by consolidation is designated as “the new company.” The stockholders of the old company become stockholders in the consolidated company except such as refuse to convert their stock into the stock of the latter company. One who refuses to do so, is paid the highest market value of his stock at any time within six months preceding the making of the agreement, to be determined, where the parties cannot agree, by arbitration. But those who voted for the agreement are estopped to refuse, so that there can be no such thing as a consolidated company without stock.
Many difficulties have been suggested, as arising, if a company, formed by the consolidation of an Ohio company with a company of another state, should be held to be a new corporation. We would have, it is claimed, the anomaly of a corporation with a capital stock, without the individual liability of the stockholders. The fallacy consists in the assumption, for such wrould not be the case. There has been some diversity of opinion as to the status of a corporation formed by the consolidation of companies under the laws of different states. But it seems pretty well settled, upon principle at least, that where formed under co-operative legislation of the different states, it becomes a corporation in each state where its- road is located. It is a legal *530 entity residing and doing business in different states, with a status in each, derived from and determined by the laws of that state. If by the laws of one of these states an individual liability attaches to the holder of stock in an incorporated company, the same liability will attach to its stockholders. The liability will, • in this regard, depend upon the laws of the state, where it is- sued. Whatever may be the holding in other states, there can be no doubt but that in Ohio the stockholders of an incorporated company, however formed, are individually liable for its debts to the extent fixed by statute. The stockholders of the company in the other states, must be presumed to know what the Ohio'law is in this regard; and by agreeing to consolidate with an Ohio company, must be presumed to assent to the individual liability attached by Ohio law to the ownership of stock in an Ohio company.

Judgment affirmed.