In the Matter of the Application of STANDARD OIL COMPANY OF NEW YORK for a Certiorari Order against WALTER W. LAW, JR., and Others, as and Constituting the State Tax Commission of the State of New York.

Third Department, May 2, 1923.

**Taxation — franchise tax — petitioner is domestic corporation doing business and having assets both within and without State — interest received on tax exempt securities is part of income in determining " entire net income " under Tax Law, § 208, subd. 3, and § 209, as amended by Laws of 1919, chap. 628 — net income is amount of gross income remaining after all necessary expenses of business have been paid — portion of net income to be allocated to this State must be determined on basis of entire net income including interest received on tax exempt securities — franchise taxes paid to foreign governments should be deducted in determining entire net income.**

Interest received on tax exempt securities owned by a domestic corporation doing business and having assets both within and without the State of New York, is, for the purpose of assessing a franchise tax under article 9-A of the Tax Law, a part of the income of the corporation and is to be considered in determining " the entire net income " under subdivision 3 of section 208 and section 209 of the Tax Law, as amended by chapter 628 of the Laws of 1919.

Net income is the amount of the gross income remaining after all the necessary expenses of the business have been paid. The definition of net income as used in the Tax Law is not to be sought for in the Federal act.

In determining the amount of the net income which should be allocated to the State of New York in the case of a domestic corporation doing business and having assets both within and without the State, the entire net income of the corporation, including the interest on tax exempt securities, should be used as the basis. It was error in this case to calculate the amount of net income to be allocated to this State on the entire net income less the amount of the interest received from tax exempt securities and to use as a tax base the result of

that calculation plus the amount of interest received from the tax exempt securities.

Franchise taxes paid to foreign governments by the corporation should be deducted from the gross income in ascertaining the entire net income.

CERTIORARI ORDER granted out of the Supreme Court at the Albany Special Term and entered in the office of the clerk of the county of Albany on the 11th day of February, 1922, directed to Walter W. Law, Jr., and others, as and constituting the State Tax Commission, commanding them to certify and return to said clerk's office all and singular their proceedings had in assessing a franchise tax under article 9-A of the Tax Law against the petitioner for the years 1919 and 1920.

*Visscher, Whalen, Loucks & Murphy* [*Peter M. Speer, Courtland Palmer* and *Robert E. Whalen* of counsel], for the relator.

*Carl Sherman, Attorney-General* [*C. T. Dawes, Deputy Attorney-General*, of counsel], for the respondent.

VAN KIRK, J.:

The petitioner is a domestic corporation doing business and having assets both within and without the State of New York. Taxes have been assessed against it for two years. It filed its reports as required by statute. The report for the year 1918 was filed October 1, 1919, and for the year 1919 was filed July 2, 1920. The final determination of the Tax Commission refusing to readjust these taxes was dated January 17, 1922. It owned and held in its New York offices considerable amounts of tax exempt bonds. It had paid during the years covered by its reports franchise taxes to foreign governments.

The method adopted by the Commission in ascertaining the base for the tax is questioned in two respects:

*First.* The inclusion of the relator's income from the tax exempt bonds in the tax base.

*Second.* The refusal to deduct the taxes paid by the relator to foreign governments.

The taxes are imposed and calculated against both foreign and domestic corporations without distinction; against domestic corporations for the privilege of exercising their corporate franchises within this State and against foreign corporations for the privilege of doing business in this State. This is not a direct tax; it is a franchise, not an income tax. The income is the measure of the tax, not the subject of it. For the purpose of such a tax the State may adopt any just and fair measure. The fact that certain bonds are tax exempt is not in itself a barrier to including the interest from them in calculating the entire net income as the

measure. (Tax Law, art. 9-A, § 209; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 147, 162, 165; *Monroe Savings Bank* v. *City of Rochester,* 37 N. Y. 365, 369; *People ex rel. United States A. P. P. Co.* v. *Knight,* 174 id. 475, 478, 479; *People ex rel. Bass, Ratcliff, etc.,* v. *Tax Commission,* 232 id. 42.)

The tax is to be computed upon the basis of the " entire net income " of the corporation for its fiscal, or the calendar, year next preceding. (Tax Law, § 209.) The vital question in the case is, What is the definition or meaning of " entire net income? " The relator claims that it has the same meaning as the taxable income upon which a tax must be paid to the United States and we must look for its definition in the Federal act. The State claims that the sole definition is in the State Tax Law, section 208, subdivision 3, as added by chapter 628 of the Laws of 1919.

We have to consider article 9-A of the Tax Law, known as the Business Corporations Franchise Tax Law, added by chapter 726 of the Laws of 1917, as amended by chapters 276 and 417 of the Laws of 1918 and by chapter 628 of the Laws of 1919 and by other statutes not here material. These amendments made important changes in the statute.

Before the amendments the statute contained no definition of net income; section 209, which imposed the tax, required that the tax be computed upon the net income of the corporation, " upon which income such corporation is required to pay a tax to the United States; " and section 214 provided for the computation of the tax " based upon the entire net income of such corporation as returned to the United States Treasury Department for such fiscal or calendar year."

Here was ground for claiming under the statute that net income was intended to have the same meaning as taxable income under the Federal act;[*] and, since the base of the tax was to be computed upon the net income as determined by the Federal government, not the State Tax Commission, and since there was no provision for a hearing upon the part of the corporation to be taxed, the act offended against the due process of law provision of the Constitution. (See U. S. Const. 14th Amendt. § 1; State Const. art. 1, § 6.) To meet this objection, and with the evident intent to divorce the State act from the Federal act, sections 208, 209, 211, 214 and 219-d of the Tax Law, together with other sections not here material, were amended by the Laws of 1918 and 1919, *supra.*

After the amendments of 1918, section 209 directed that the franchise tax be computed by the Tax Commission upon its net

---

[*] See Federal Revenue Act of 1916, being 39 U. S. Stat. at Large, 765, § 10; Id. 767, § 12; Id. 770, § 13.— [REP.

income for its fiscal or calendar year next preceding, " which income is presumably the same as the income upon which such corporation is required to pay a tax to the United States." Section 211, providing what shall be contained in the report of the corporation to the Tax Commission, required, among other things (Subd. 2), that the report contain " the amount of its net income for its preceding fiscal or the preceding calendar year as shown in the last return of annual net income made by it to the United States Treasury Department, and, if the corporation shall claim that such return is inaccurate, the amount claimed by it to be the net income for such period; " and (Subd. 7) " Such other facts as the Tax Commission may require for the purpose of making the computation required by this article." Section 214 provided: " If the entire business of the corporation be transacted within the State, the tax imposed by this article shall be based upon the entire net income of such corporation for such fiscal or calendar year as returned to the United States Treasury Department, subject, however, to any correction thereof for fraud, evasion or error, as ascertained by the State Tax Commission.". It so appeared that, while before these amendments taxable income under the Federal act was the net income of the State act and there was no modification permitted except in case the Federal Tax Department discovered an error and changed the amount of the taxable income, in which case such tax must be recomputed upon the changed amount (§ 219-d), after these amendments, the income upon which the " corporation is required to pay a tax to the United States " is no longer the " net income " upon which the State tax is to be computed, but is only presumably such; the tax report or return made by the corporation to the Federal treasury is but part of the evidence to be considered. The State Tax Commission must for itself ascertain the net income and compute the tax upon all the evidence presented and after all objections have been heard and determined and all errors corrected, and any mistake made by the Commission is reviewable by the court. But these amendments had not accomplished the full legislative intent. In *People ex rel. Barcalo Mfg. Co.* v. *Knapp* (227 N. Y. 64), decided after the amendments of 1918 and before the amendments of 1919, it is said: "A definition of the words ' net income ' was not incorporated in the statute. The meaning given and characterizing them through and as used in the Federal statutes was their meaning as used in the State statute. * * * While the basis for the computation of the Commission is the returned net income under the Federal statutes, the Commission is free to fix, from the return and any other information, the true and correct amount of the net income, but not to change the nature or definition of it."

Then the amendments of 1919 were made. The words " entire net income " were substituted through the statute for the words " net income." Section 208, subdivision 3, defined entire net income: " The term ' entire net income ' means the total net income before any deductions have been made for taxes paid or to be paid to the government of the United States on either profits or net income or for any losses sustained by the corporation in other fiscal or calendar years whether deducted by the government of the United States or not." And in section 214, in place of the words " as returned to the United States Treasury Department," were substituted the words " as defined in section two hundred and eight of this chapter." Some other changes in the wording of the statute were made, which we need not quote. It cannot now be said that there is not a definition of net income in the statute and in our view it can no longer be successfully maintained that the Legislature intended that the definition of net income in the State act has the same meaning as taxable income in the Federal act. It is said that this " definition " in the State act is no definition, that it does not in terms specify what items shall make up the gross income and what items shall be deducted to determine the net income. But we need not concern ourselves about the name of the thing; the Legislature called it a definition, but, if it is not, it is certainly a positive, clear declaration of the legislative intent and meaning which is the one purpose of a definition. There is no necessity that " net income " should be so specifically defined and limited. A statute contains definitions of terms only when terms used are intended to have a special or an unusual meaning, and when necessary to make the meaning and intent clear. But the words " net income " have a common and usual meaning known to the business and commercial world. Reading the definition in the statute we think it plain that the Legislature intended these words to have their ordinary meaning. " Net " is defined in Webster's New International Dictionary, " remaining after the deduction of all charges, outlay, loss, etc." In *People ex rel. Barcalo Mfg. Co.* v. *Knapp* (187 App. Div. 89, 95) in this department, Mr. Justice WOODWARD writing, is this definition: " The net income of a corporation is, of course, the amount of its income after paying its expenses; its overhead, its interest on borrowed money, its labor and material costs, etc., and these, in the absence of statutory provisions, include moneys actually paid out for taxes." We must accept and be controlled by the definition as the Legislature has declared it. The tax is to be computed upon the net income for the preceding year. All the income for that year has been received and all the expenses have been incurred and we must hold that

net income is the amount remaining after all the necessary expenses of the business have been paid; and that the definition of net income as used in the State act is not to be sought for in the Federal act. Some deductions allowed by the Federal act certainly would reduce the actual income without regard to any expense of conducting a business. Under the Federal Revenue Act of 1918 as it stood in 1919 and 1920, in determining the taxable income, dividends from stocks of domestic corporations are to be deducted (40 U. S. Stat. at Large, 1077, 1078, § 234),* and interest from Federal, State and municipal bonds are not included in gross income (40 id. 1065, § 213; Id. 1077, § 233),† yet surely these are a part of the income of a corporation owning such stocks and bonds; and it should be noted that the amount of such dividends and interest must be included in the return to the Federal treasury. (See 40 id. 1081, § 239.)‡ If such dividends and interest may not be included in the franchise tax base, then a corporation organized or doing business in this State as a holding company of stocks and bonds might do a profitable business here and at the same time wholly escape the franchise tax.

The instant case comes directly under that part of section 214 of the Tax Law as follows: " If the entire business of such corporation be not transacted within the State, the tax imposed by this article shall be based upon a proportion of such entire net income, to be determined in accordance with the following rules: " The rules are then stated, providing what classes of assets shall be considered in determining the ratio to be applied in allocating the net income in this State which is to be the base of the franchise tax, and which ratio shall be as the total of the classes of assets named held in the State is to the total of the like classes held both within and without the State, that is, wherever held. This statute, as it stood when the assessments in this case were made, was passed upon in *People ex rel. Bass, Ratcliff, etc.,* v. *Tax Commission (supra)* and was held by a unanimous court to be constitutional and enforcible. In that case the corporation was organized under the laws of Great Britain and did part of its business in the State of New York. It had shares of stock of other corporations amounting to $845,195. In computing the total assets the value of these shares to ten per cent of the aggregate real and tangible personal property (§ 214, subds. 3, 6) was included. It does not appear whether any of these

---

*Now Federal Revenue Act of 1921 (42 U. S. Stat. at Large, 254, 255), § 234.— [REP.

†Now 42 U. S. Stat. at Large, 237, 238, § 213; Id. 254, § 233, being Federal Revenue Act of 1921.— [REP.

‡Now Federal Revenue Act of 1921 (42 U. S. Stat. at Large, 259), § 239.— [REP.

stocks were held in the State of New York, but there were assets in the State of New York to the amount of $44,117. The relator had, during the year reported, no net income in the State of New York, but it did business in this State that year amounting to $240,000. The Tax Commission fixed as the tax base in the State of New York the sum of $27,537.68 and computed the tax thereon. The court said: " The sole question considered on this appeal is the constitutionality of the operation of the Tax Law which makes as the basis of relator's taxable net income in New York a portion of its net income earned wholly outside the State." By unanimous decision the determination of the Commission is upheld.

Thus we come to the two questions presented on this appeal:

(1) It already appears that interest on the tax exempt bonds are a part of the income of the relator. While the Commission did include this interest in the tax base, the method of calculation adopted was wrong. It properly determined the ratio to be applied under section 214 and no complaint is made of the method of this calculation. But, before applying the ratio and allocating the net income to this State, it deducted from the entire net income the interest on the tax exempt bonds and calculated upon this difference the amount of net income to be allocated to this State. Having made this calculation, it added to the product obtained the whole amount of the interest on the tax exempt bonds and used this sum as the tax base. This was an erroneous method; the decision in *People ex rel. Alpha Portland Cement Co.* v. *Knapp* (230 N. Y. 48) was misunderstood. The income of the bonds should have been allocated in the same proportion or upon the same ratio as other income. A simple example will illustrate the injustice of the method adopted. If we assume the entire net income of the corporation is $100,000; that in this is included $25,000 from interest on tax exempt bonds and that the ratio determined is as one to two; the tax base should be $50,000. As calculated by the Tax Commission in this case, the $25,000 is first deducted and the sum to which the ratio is applied is $75,000; one-half of this is $37,500; then it added the $25,000 item and we have the erroneous tax base, $62,500.

(2) From the foregoing it follows that the taxes paid to foreign governments during each of the years covered by the reports should be deducted in ascertaining the entire net income. If the Legislature had intended that taxes other than those mentioned in the definition of entire net income (Tax Law, § 208, subd. 3) should not be deducted in determining the entire net income, it could readily have said so. The relator did not have remaining in its treasury for distribution, or other uses of the corporation, the moneys which it has necessarily paid out during the year in carrying

on, and bearing the burdens of, its business. These taxes were part of the moneys so expended; its gross income had been lessened by the amount of these taxes.

The determination should be annulled and the matter remitted to the State Tax Commission to revise and fix the taxes for the two years in harmony with this opinion.

Kiley and Hinman, JJ., concur; H. T. Kellogg, Acting P. J., concurs in part with an opinion; Hasbrouck, J., not sitting.

H. T. Kellogg, Acting P. J. (concurring in part):

The majority opinion concedes that net income, which in the year 1918 measured the tax imposed upon certain corporations by article 9-A of the Tax Law, was then ascertainable solely by reference to Federal statutes defining such income for Federal income tax purposes. This conclusion was necessarily compelled by a provision of section 209 of the Tax Law which then ordained that the tax upon any corporation covered by the article should be computed " upon the basis of its net income for its fiscal or the calendar year next preceding, as hereinafter provided, which income is presumably the same as the income upon which such corporation is required to pay a tax to the United States." (Tax Law, § 209, as amd. by Laws of 1918, chap. 276.) In the year 1919 the section was amended so that the quoted provision was made to read: " Upon the basis of its entire net income for its fiscal or the calendar year next preceding, as hereinafter provided, which entire net income is presumably the same as the entire net income upon which such corporation is required to pay a tax to the United States." (Tax Law, § 209, as amd. by Laws of 1919, chap. 628.) It will be observed that the sole change consisted in the introduction into the quoted provision of the word " entire," so that in one place " net income " appeared as " entire net income," and in another " income " appeared as " entire net income." According to the majority opinion this amendment eliminated the Federal definitions and made net income, for the purposes of article 9-A, otherwise determinable. How it can be thought that such a complete metamorphosis of our Tax Law was thus accomplished is not comprehensible to me. Net income is found by making certain deductions from gross income. It consists of *all that is left* when the process of subtraction is complete. Of necessity " entire net income " can be nothing greater and is nothing less. The use of the word " entire " certainly neither enlarges the factor of gross income nor diminishes the factor of deductions to be made. These factors control the problem, and that which does not affect them cannot affect its result. In my judgment " entire net income " and " net income "

are synonymous. Therefore, I think that the introduction of the word " entire " in nowise altered the meaning of section 209 and left " net income " to be determined by the same standards as before.

The majority opinion also lays stress upon a so-called definition newly introduced into the Tax Law by an amendment of the year 1919. That definition reads: " The term ' entire net income ' means the total net income before any deductions have been made for taxes paid or to be paid to the government of the United States on either profits or net income or for any losses sustained by the corporation in other fiscal or calendar years whether deducted by the government of the United States or not." (Laws of 1919, chap. 628.) This so-called definition proclaims that certain taxes and certain losses *shall not be* deducted. It does not tell what *shall* be deducted nor what constitutes gross income from which deductions shall be made. As a definition, therefore, it is reduced to the following: " The term ' entire net income ' means the total net income." In other words, the Legislature has made the startling pronouncement that in its judgment the word " entire " is synonymous with the word " total." It had not occurred to me that any one regarded it as meaning anything else. That the so-called definition is not in fact a definition seems to me apparent. It is clear that the writer of the majority opinion, Mr. Justice VAN KIRK, himself senses its entire inadequacy and futility. He at first says: " It cannot now be said that there is not a definition of net income in the statute." He then says: " It is said that this ' definition ' in the State act is no definition, that it does not in terms specify what items shall make up the gross income and what items shall be deducted to determine the net income." How could it be effective as a definition, let me ask, if it defined neither the elements entering in to form the minuend nor those to form the subtrahend of this problem in subtraction? The opinion continues: " There is no necessity that ' net income ' should be so specifically defined and limited. A statute contains definitions of terms only when terms used are intended to have a special or an unusual meaning, and when necessary to make the meaning and intent clear." This apology for the absence of a statutory definition of " net income " does not harmonize with the previous assertion that the statute now defines it.

If " entire net income " means the same as " net income," and if the so-called definition is meaningless, it may be asked: What was the legislative purpose in making the amendments? The question may best be answered by other questions. Why, if the Legislature by the amendment intended to eliminate the use of the Federal definitions, did it re-enact in section 209 the old provision

that State net income " is presumably the same as the entire net income upon which such corporation is required to pay a tax to the United States? " Why did it provide in the so-called new definition that net income was such income before deductions had been made for certain taxes and certain losses in other fiscal years " whether deducted by the government of the United States or not? " Except for the provisions of a Federal statute neither the taxes nor the losses in question would be deducted from gross income to determine net income. To my way of thinking the references made necessarily compel the conclusion that, with the exceptions specified, the Federal standards determining net income are made to continue as State standards for determining such income. It seems to me that the majority opinion reflects an effort to make the law what it ought to be rather than to interpret the law as it was written by the Legislature, and that the holding proposed will have the effect of effacing from the statute sentence after sentence of legislative pronouncements which are in complete antagonism therewith. In my judgment it is better to refrain from imparting vigor to the meaningless words of the amendments rather than by so doing to run counter to positive and pregnant provisions of the statute which are retained notwithstanding the amendments. For these reasons I think it should be held that the Federal definitions of "net income" still control and that the relator is entitled to complain that its tax has been measured otherwise than by the net income which it has received.

Determination annulled, with fifty dollars costs and disbursements, and matter remitted to the State Tax Commission to revise and fix the taxes for the two years in accordance with the opinion of VAN KIRK, J.