Porto Rican & American Insurance Co., Plaintiff and Appellant, v. Juan G. Gallardo, Treasurer of Porto Rico, Defendant and Appellee.

No. 3789. Argued February 2, 1926.—Decided July 29, 1926.

*J. J Ortiz Alibrán* for the appellant. *Hon. George C. Butte, Attorney General, Carlos Llauger Díaz* and *J. A. López Acosta* for the appellee. *H. Franceschi* filed a brief as *amicus curiae* for *Armstrong, Keith & Kern*.

Mr. Justice Wolf delivered the opinion of the court.

The complainant Porto Rican & American Insurance Company is a domestic corporation organized under the laws of Porto Rico and subject to the payment of taxes imposed by the laws in force. The said corporation for the years 1922–23 presented a return to the Treasurer of Porto Rico wherein were included primarily the amount of its shares and undivided profits, taking as the value of said shares what appears on their face, or $100, the said property amounting to $66,190; furthermore a description of the property of the said corporation possessed, detailed as follows:

| | |
|---|---:|
| Cash on hand | $ 6,448.66 |
| Liberty Bonds | 90,537.26 |
| Shares in Corporations | 11,850.00 |
| Mortgage Credits | 16,000.00 |
| Notes and other personal credits | 14,409.65 |
| Total | $139,245.57 |

The Treasurer of Porto Rico took as a basis for taxation

the capital stock at its face value, $60,000, and undivided profits $6,190, in all $66,190, and required the complainant to pay the sum of $1,323.80. After the Board of Review and Equalization on appeal affirmed the Treasurer's decision the complainant paid the amount under protest and brought this suit which the district court dismissed.

The complainant in the district court maintained that the Treasurer had no right to impose any tax except on the cash on hand, namely, $6,448.66, as the liberty bonds, shares of stock, mortgage credits and notes were exempt from taxation, either by virtue of the laws of the United States or the laws of Porto Rico, and in the latter instance section 291 of the Political Code.

In our consideration of this case we have been confronted with various propositions. First, and this in the main is the position of the Treasurer of Porto Rico, that the tax here sought to be imposed by virtue of section 317 of the Political Code falls by its terms on the stockholders and not on the corporation itself; second, and this was the position of the court below, that the tax is an excise and hence, according to the court, following to a large extent *France & New York Medicine Co.* v. *Reily et al.*, 31 P.R.R. 617, falls on the stockholders rather than on the corporation, and third, that the taxation sought to be imposed is in reality on the corporate franchise granted by The People of Porto Rico. The theory involved in any and all of these propositions is that exempt personal property may not be deducted by the corporation.

■■ Section 317 of the Political Code, as amended in 1904, reads:

"The personal property of institutions, corporations and companies incorporated under the laws of Porto Rico other than banking institutions having a share capital shall be assessed to such institutions, corporations and companies by the Treasurer of Porto Rico in the manner provided by this section. The actual present value of the capital of such corporations shall be ascertained by the Treas-

urer of Porto Rico from the sworn declarations of the presidents, directors or other chief officers of such corporations as required by section 319, and from such other reliable information as the Treasurer may have or secure, and the present actual value shall in no case be less than the value of the capital stock and bonds plus the surplus and undivided earnings of said institutions, corporations and companies, nor less than the market value of the real and personal property of said institutions, corporations and companies, including in personal property rights, franchises and concessions. From the valuation thus obtained shall be deducted the total valuation of real property of said corporations, as ascertained in accordance with the provisions of section 316, and the remainder shall be deemed to represent the personal property of said corporations for purposes of taxation.''

The plain reading of this section would tend to convince us that the Legislature was imposing a tax on the property of the corporation and on the personal property of the corporation. The Treasurer in reality has no choice. From the return made by the corporation or other information he may obtain he must, after deducting the value of the real estate, assess the capital stock, bonds and undivided profits of the corporation at their value, and if this value is less than the market value of all the property of the corporation, then the said market value shall be the basis of the taxation. If some confusion arises in the mind by reason of some of the language used in the midst of the section, the purpose of the Legislature is made clear by the concluding words: ''And the remainder shall be deemed to represent the personal property * * * .'' If, by reason of the *equivalency* sought to be established by said final words the intention is at all doubtful, it is made clear in the preamble contained in the section itself. The ''personal property'' is to be assessed to the corporation in the manner provided by the section. The Treasurer must only adopt the mode which will give the highest valuation for the said personal property. He is not empowered to pursue a method or establish a basis which would give the best results to The People of Porto Rico otherwise than by

choosing the mode which will give the highest valuation of the property of the corporation whose assessment the Treasurer is considering. He is not, under section 317, empowered to place a tax on the stockholders, but only on the personal property of institutions, corporations and companies incorporated under the laws of Porto Rico.

While when a corporate franchise is to be taxed and the Legislature has so determined, the taxation of the franchise might be determined more or less in the mode set forth in section 317, *Schwab* v. *Richardson*, 263 U. S. 88; *Tremont & Suffolk Mills* v. *Lowell*, 178 Mass. 471; *Hannan* v. *First National Bank*, 269 Fed. 531, yet the use of the words "value" and "valuation" are significant and they generally import a tax on property and not a franchise or an excise tax. *Powers* v. *Detroit & Grand Haven Railway*, 201 U. S. 561, where the court said that a valuation rather than a mathematical apportionment was intended; *Bank of Commerce* v. *New York*, 2 Black, 620; *Pingree* v. *Dix*, 44 L. R. A. 688; Cooley on Taxation, vol. 2, par. 850, 4th Ed. Generally these words "value" and "valuation" refer to a tangible price and the tangible price of property. In the *Hannan Case, supra,* where a valuation was permitted the Legislature had made it absolutely clear that the tax was to fall on the shareholders.

The division of taxes in the Political Code tends strongly to show that it was the intention of the Legislature to tax tangible property or its representative in intangible property, as particularly set forth in section 317, and also that there was no intention to make the valuation a measuring rod for something other than a tax on the capital of the corporation as constituted by its property. Title IX of the Political Code is devoted to revenues. Chapter 1 thereof by its title relates to the assessment of property. Section 285, as originally passed, taxed a certain rate on real and personal property not belonging to corporations and a different and a higher rate on all the real and personal prop-

erty of all corporations. Comment is made in the text-books on the tendency to impose higher taxation of corporations, but such excess is justified always by the peculiar privileges, protection and limited liability afforded such artificial persons created by the State. With only a difference in the rate of taxation the idea was to tax all persons in Porto Rico in the same manner. Section 285 was repealed implicitly by substitution in 1908. The rate of taxation was made equal for all persons by the substitute Act of March 12, 1908, p. 187. The tax was to be on all real and personal property in Porto Rico. The division of taxation into "real" and "personal" as originally designed by the Legislature remained unchanged. Section 317 in this regard was harmonious with section 285 before 1908, and in that year no intention was displayed to vary the harmony theretofore existing. Nothing was done to show that the taxation fixed by section 317 should relate to franchise or excises or that its words should be interpreted in a different sense than was originally indicated by section 285.

Section 290 of the Political Code is as follows:

"That all property not expressly exempted from taxation shall be assessed and taxed. For the purposes of the assessment and collection of taxes, real property shall be deemed to be synonymous with immovables as defined in sections 333, 334 and 335 of the Civil Code; Provided, however, That machinery, vessels, instruments or implements not fixed to the building or soil shall not be deemed to be real property. Personal property shall include such machinery, vessels, instruments or implements not fixed to the building or soil, livestock, money, whether in the possession of the owner thereof or held by or on deposit with some other person or institution, bonds, stocks, certificates in unincorporated syndicates or partnerships, patent-rights, trade-marks, franchises, concessions and all other matters and things capable of private ownership and not included within the meaning of the term 'Real property,' but shall not include book-credits, promissory notes nor other personal credits."

This is taxation on property and does not contemplate

franchises or make provision for excises. There is a separate subdivision of the Political Code to cover excises.

Various sections of the Political Code prior to section 317, all contained under Title IX of the said Code, show that taxation on tangible property in Porto Rico was held in mind. Under section 308, for example, the permanent Board of Review and Equalization was created and sits to revise assessment on "real and personal" property as provided by this title, namely, Title IX. The Board is to be composed in part of persons versed in the value of property of Porto Rico.

Section 316 provides for the taxation of real property of domestic corporations. Section 317, the one under discussion, following the general scheme, determines the taxation of personal property of the same domestic corporations. In section 320 foreign corporations are taxed. Says the Legislature in said section:

"* * * *Provided, however,* That in the determination of the actual present value of the capital of such corporations only such part of the capital of such corporations shall be considered and assessed as is employed in the transaction of business in Porto Rico, but the amount of such capital shall in no case be less than the value of the real and personal property of such corporation or company situated in Porto Rico, including in such personal property all franchises or concessions granted said corporation or company under the laws of Porto Rico."

The same purpose exists to reach or estimate the personal property of corporations, strangers to us except in having property here or doing business in the Island. Section 317 uses the words "capital stock" where section 320 says "capital," differences to which we shall allude hereafter. Section 318, referring to local corporations, is as follows:

"If the total valuation of the capital of any such institution, corporation or company, as reported by the president, director or other chief officer thereof, shall be increased by the Treasurer, the

Treasurer shall notify said president, director or other chief officer thereof and said institution, corporation or company shall have a right of appeal from such valuation to the board of review and equalization: *Provided,* Said institution, corporation or company shall file a notice of protest with said board within fifteen days of the sending of said notification.''

We think that this section likewise has in mind a property tax. It is a more or less tangible property that is being considered. The whole scheme of Title IX, when not otherwise clearly expressed, is a tax on real and personal property belonging to all individuals, corporations or otherwise.

Independently of the wording of section 317 the Treasurer bases his principal reliance on section 322 of the Political Code, which is a section also contained under Title IX of said Code. This section provides:

''Insular, municipal and local taxes upon capital, shares and property of the institutions, corporations, and companies included within the meaning of this Title and upon shares in banks engaged in business in Porto Rico, shall be payable at the office of the Treasurer, who shall pay, pursuant to law, the proportion of such municipal and local taxes due, to the proper officers of the respective municipal districts or local divisions; and said institutions, corporations and companies are hereby authorized to retain the proportionate taxes upon capital shares from the earnings or dividends accruing to the owners thereof, or to cancel a proportion of said shares sufficient to pay said taxes. Insular, municipal and local taxes upon such institutions, corporations and companies shall be due in semiannual installments, and all penalties for delinquency and the liability to attachment, seizure and sale of property hereinafter provided shall apply to such institutions, corporations and companies in the same manner as to private individuals.''

We can not see that such section is anything more than a general provision by which the taxation upon share stock actually already assessed to shareholders and ultimately to come out of their individual holdings by the law shall be paid and collected by the corporation. Section 322 in no way determines what the taxation of corporations shall be. With regard to domestic corporations the taxation and the

form thereof is specifically determined by section 317. Therefore, unless section 317 in itself and by its own force imposes a tax on shareholders, section 322 can furnish no aid to the Treasurer. We draw attention also to the fact that it is in section 322 that the word "share" is used, while in section 317 no such word appears. We shall discuss some of the distinctions between the words "capital stock" and "share capital."

The appellant says, and we think correctly, that taxation on shares has only been imposed upon the banks and banking institutions in Porto Rico.

We revert to a consideration of section 317. Whether an assessment of shares of stock is to be deemed one against shareholders individually or one against the corporation is to be determined mainly by the facts of the particular case. Cooley on Taxation, par. 981, p. 1971, 4th Ed.; *Home Ins. Co. v. New York*, 134 U. S. 594; *Van Allen v. The Assessors*, 3 Wall. 573; *Powers v. Detroit & Grand Haven Railway Co.*, 201 U. S. 543; *Delaware, etc., R. R. Co. v. Penn.*, 198 U. S. 341; *Des Moines Nat. Bank v. Fairweather*, 263 U. S. 103; *Adams Express Co. v. Kentucky*, 166 U. S. 171; *C. O. & G. R. Co. v. Harrison*, 235 U. S. 292; *Iowa Loan & Trust Co. v. Fairweather*, 252 Fed. 608; *In re Oklahoma National Life Ins. Co.*, 173 Pac. 376; *In re Assessment of Amazon Fire Ins. Co.*, 173 Pac. 655; *Union Trust Co. v. Coleman*, 126 N. Y. 443, 440, 27 N. E. 818, 12 L. R. A. 762, and other cases on page 23 of the brief for appellant.

That "capital" and "capital stock" are used interchangeably and are not to be considered as share stock or a tax on the shareholders appears from the following citations: *Home Savings Bank v. Des Moines*, 205 U. S. 503; *Powers v. Detroit & Grand Haven Railway Co.*, 201 U. S. 560; *First National Bank v. Adams*, 258 U. S. 365; *Owensboro National Bank v. Owensboro*, 173 U. S. 664; *Bank of Commerce v. New York*, 2 Black, 620; *Delaware, etc., R. R. Co. v. Penn.*, 198 U. S. 354; *People ex rel. Lackawanna*

*Trans. Co.* v. *Knight,* 75 App. Div. New York, 164, and cases; 9 C. J., 1278, note 36 (*a*). Likewise some of the cases cited in the preceding paragraph.

The foregoing cases also settle the point that the words "capital" or "capital stock" used absolutely in a statute, and no contrary intent appearing, are to be interpreted as falling on the capital of the company and not on the shareholders.

*Delaware, etc., R. R. Co.* v. *Penn., supra,* is particularly applicable. Said the court: "The Supreme Court of Pennsylvania has held that a tax on the value of the capital stock is a tax on the property and assets of the corporation issuing such stock (citing cases). This court has also held that a tax on the value of the capital stock of a corporation is a tax on the property in which that capital is invested, and in consequence no tax can thus be levied which includes property that is otherwise exempt," citing cases.

The appellant, as we have indicated before, points out that when the Legislature has desired to put a tax on the shareholders it has plainly done so as in the case of banks and banking institutions. The appellant draws attention to the fact that section 317 and other sections of the Political Code as originally drawn did not exclude banking institutions from the operation of the general laws against domestic corporations, but that in 1904 the Legislature clearly showed its intention that such banks and banking institutions should be separately and differently taxed, namely, by putting a tax on the shareholders.

The decisions also tend to show that a tax on the value of the capital stock is generally a tax on the property and is not to be interpreted as a franchise or an excise.

The only words in section 317 that could possibly show an intention to tax the share stock of the shareholders are the words "capital stock." But previously in the same section the Legislature had said "The actual present value of the capital of such corporations shall be ascertained," etc.

852

The words "capital" and "capital stock" are used interchangeably in the section itself. In section 318 heretofore cited the Legislature again speaks of the total valuation of the "capital."

The word "capital" has frequently been defined, but always to designate the property of a corporation. Note to *Foster* v. *Stevens,* 13 L.R.A. 166; 9 Corpus Juris, 1278.

In *Home Savings Bank* v. *Des Moines, supra,* the banks were corporations created by the State of Iowa. The court said that it must inquire whether the law really imposed a tax upon the shares of the stock as the property of their owners or merely adopted the value of those shares as a measure of the valuation of the property of the corporation, and by that standard taxes that property itself; that there might be a tax upon the shares of a corporation which are property distinct from that owned by the corporation and with a different owner, without an allowance of the exemption due to the property of the corporation itself, while, if the tax is upon the corporation's property, all exemptions due it must be allowed; that the law imposed no obligation on the shareholder, and that the taxes, therefore, were not to be paid by the corporations as agents of their stockholders, but as their own debt, and that unless it be supposed that the law required them to pay taxes upon property which they do not own, the taxes must be regarded as taxes upon the property of the corporation. The court said:

"In the valuation for taxation the assessor is required to 'take into account the capital, surplus and undivided earnings,' must be furnished with 'a verified statement of all matters provided by the preceding section,' which by reference is seen to be a detailed statement showing the assets of the bank."

And the court also said after reviewing cases:

"The case at bar cannot be distinguished in principle from these cases. In the first case the tax was on the capital stock at its actual value; in the second case on the amount of the capital stock and

the surplus earnings, and in the case at bar on the shares of the stock, taking into account the capital, surplus and undivided earnings. It would be difficult for the most ingenious mind and the most accomplished pen to state any distinction between these three laws, except in the manner by which they all sought the same end—the taxation of the property of the bank. The slight concealment afforded by the omission of the property *eo nomine* is not sufficient to disguise the fact that in effect it is the property which is taxed. If included in that property it is discovered that there is some which is entitled by Federal right to an immunity, it is the duty of this court to see that the immunity is respected."

The Supreme Court recognized the principle that when the tax is made to fall on the shareholders rather than on the corporation exempt property need not be considered. In the case in which this point was originally decided three judges dissented on the ground that the taxation on the shareholders really fell on the corporation. In other words, the dissenting judges thought that property of the corporation was really ultimately taxed. Again the court said:

"But the distinction between a tax upon shareholders and one on the corporate property, although established over dissent, has come to be inextricably mingled with all taxing systems and cannot be disregarded without bringing them into confusion, which would be little short of chaos."

Therefore, it seems evident to us that the Supreme Court of the United States has decided directly that when the Legislature intends a tax to fall upon the shareholders rather than on the corporation, specific and express words must be used to carry such an intention into effect. It is true that in the same case of *Home Savings Bank, supra,* the Supreme Court said that the substance and effect of a statute must be considered, yet, considering the words here used, we can not see that section 317 can have a different interpretation than was given to the statutes before the Supreme Court of the United States when Iowa sought to tax its banks.

When a state desires to put a tax both upon the corporation and its shareholders the intention must be clearly dis-

played; otherwise the courts will interpret the statute to mean one of two things, either a tax on the corporation or a tax on the shareholders. Statutes will not be construed to authorize taxation of both property of corporations and shares of stockholders unless intent to that end is clear. *Tennessee* v. *Whitworth,* 117 U. S. 129, 134; *New Orleans* v. *Houston,* 119 U. S. 265, 277; *Loring* v. *Beverly,* 222 Mass. 331; *Board, etc.,* v. *Ryan,* 232 Pac. 834, and cases, 26 L.R.A. 158. In the first-named case national banks were being discussed and the court held that the *capital stock* (our italics) involved in United States securities was exempt, but shares of stock in the hands of individual stockholders might be taxed. Four elements of taxation were recognized, namely: First, franchises; second, capital stock in the hands of the corporation; third, corporate property, and fourth, shares of the capital stock in the hands of the shareholders. Each of these was under some circumstances an appropriate subject of taxation, and a state might under conceivable circumstances double up taxation, but the intention to impose double taxation must be clear. *A fortiori,* every presumption is against an intention of the Legislature to give the Treasurer a right to choose the mode of taxation. In *Loring* v. *Beverly, supra,* the court said that shares of stock were property distinct from the capital, franchises or other property of the corporation. "Taxation," pursued the opinion, "upon one or all of these elements of property of the corporation does not prevent taxation upon the shares of stock as property of the owner at his domicile. While possibly both kinds of property might be taxed in the same jurisdiction, such an intent on the part of the Legislature never would be presumed in the absence of unequivocal words to that end."

The tax can not be a tax on the corporation or on the shareholders at the option of the Treasurer. To assert that the Treasurer at his election may choose to impose a tax either upon the shareholders or upon the corporation would be to delegate legislative powers to the Treasurer. In *Peo-*

*ple* v. *Neagle*, 21 P.R.R. 339, we reviewed the authorities to show that certain administrative faculties might be delegated to the Treasurer. We laid emphasis upon the fact that the Treasurer in certain cases might fill in details, but the Legislature has no right to delegate to the Treasurer the right to say on whom taxation shall fall. This is clearly a legislative faculty. That legislative powers can not be delegated is the uniform jurisprudence of the courts. *People* v. *Neagle, supra,* with cases, and specially *Field* v. *Clark,* 143 U. S. 649; *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, 164; *State* v. *Elam,* 39 L.R.A. (N. S.), 686; *James* v. *U. S. Fidelity, etc., Co.,* 133 Ky. 299, 117 S. W. 406; 37 Cyc. 724 *et seq.*; 26 R.C.L. 30. Therefore, a construction of the statute should be accepted that did not leave it optional with the Treasurer to choose a mode of estimate or valuation which in one case would allow property to be exempted and in another would not.

More or less in the same connection, as pointed out by the plaintiff, section 2 of the Organic Act, unnumbered paragraph 22, provides that the rule of taxation in Porto Rico shall be uniform. It is evident that if the Treasurer may in one case fix a tax on the shareholders and in another a tax on the corporation itself, the rule of taxation in Porto Rico would not be uniform. Yet, apparently it is the contention of the Treasurer that under section 317 he has the right to impose either a property tax or a tax on the shareholders.

The tax can not be sustained as a tax on a corporate franchise. No such intention appears anywhere in the Political Code. In all the cases that we have seen the intention to tax the franchise was clearly displayed, either by the constitution or the statutory laws of a particular state. Hurriedly reading some of the Massachusetts decisions, for example, it would seem that a taxation on a franchise is measured somewhat in the manner set forth in section 317 of the Political Code, but in Massachusetts, we apprehend,

either the statutes directly determine a tax on the franchise or else the constitution of that state made it necessary for such an interpretation to be put upon the legislative action. *Manufacturers' Ins. Co.* v. *Loud,* 96 A. D. 715, 99 Mass. 146; *A. J. Tower Co.* v. *Comm.,* 223 Mass. 373; *Loring* v. *Beverly,* 222 Mass. 331; *Murray* v. *Berkshire Life Ins. Co.,* 104 Mass. 586; *Nat'l Bank of Commerce* v. *New Bedford,* 155 Mass. 316; *Tremont & Suffolk Mills* v. *Lowell,* 178 Mass. 471, and cases cited. So far as we can discover neither Massachusetts nor any other state has statutes like our own, wherein the intention to tax "personal property" was so plainly manifested.

In addition to the fact that it appears to us that there is no intention to tax the franchise, the Treasurer and his advisers have also understood it in this wise and a contemporary construction by administrative authorities is to be given some weight.

When taxation is to be considered as a franchise and not a property tax, was discussed by the United States Supreme Court in a series of cases. *Society for Savings* v. *Coite,* 6 Wall. 594; *Provident Institution* v. *Massachusetts,* 6 Wall. 611; *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632; but there was involved no valuation of property, nor was a statute like our own being considered. In *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 576, the distinction was shown to rest, not on any necessary reference to property, but rather on the privilege of doing business; in Porto Rico more particularly covered by the so-called *patente* law. *Flint* v. *Stone Tracy Co.,* 220 U. S. 164; *Kansas City Ry.* v. *Kansas,* 240 U. S. 232; *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 83, all show how differently a legislature proceeds when it wishes to impose a franchise tax.

The Treasurer places some reliance on *France & New York Medicine Co.* v. *Reily et al.,* 31 P.R.R. 617, *supra.* The facts there were totally distinct, and perhaps the case may be distinguished. However, whether such distinction may

or may not be made, we feel bound to follow the reasoning and jurisprudence cited.

The appellant places some reliance on *Gromer* v. *Central Life Ins. Co.*, 19 P.R.R. 856, and *Fajardo Sugar Co.* v. *Richardson;* 22 P.R.R. 290. Something there was favoring appellant in these decisions, but the taxation was on foreign corporations and a property method was being pursued. Section 317 was not involved.

We arrive at the conclusion that whether the tax is imposed on the capital, on capital stock or the physical property, the resulting taxation is on the property of the corporation.

In arriving at our decision we have also had the benefit, in a similar case, of the reasoning and conclusion of Mr. Justice Wells of the United States District Court for Porto Rico in the case of *Fajardo Sugar Co.* v. *Juan G. Gallardo, Treasurer,* Eq. No. 1295.

As this was a tax directed against the capital of the corporation the property exempt by law should not be included. We agree with appellant that it is entitled to a return of $1,227.93, as in this case only the cash on hand could be taxed.

The judgment should be reversed.

Chief Justice Del Toro and Justice Franco Soto dissented.

DISSENTING OPINION OF MR. CHIEF JUSTICE DEL TORO.

I am of the opinion that the judgment appealed from should be affirmed for the reason that the procedure followed by the Treasurer and ratified by the Board of Review and Equalization is correct. The assessment was based on data furnished by the corporation itself. The Treasurer levied no tax whatever on the property exempt from taxation by operation of law. He considered the value of the shares of stock, which is something independent and assessable under a rational construction of section 317 of the Political Code.

858

Laws of the nature of those construed in this case have been the object of heated debate and litigation in the majority of the States, and generally the Supreme Court of the United States has had to decide the matter, even its decisions not being unanimous. Our discrepancy, therefore, is not strange. It is our belief that we are upholding the true interpretation of our statute, which is of American origin, according to the intent and purpose of the Legislature in enacting it for Porto Rico.

The fundamental issue in this case rests on the provisions of sections 317 and 322 of the Political Code, approved March 1, 1902, and comprised in Title IX under the heading "Revenues". Comp. of 1911, p. 547. The act was known as the "Hollander Bill". It has been applied ever since, and with the exception of the more recent case of *The France and New York Medicine Co.* v. *Reily et al.*, 31 P.R.R. 617, nothing had been brought up directly involving the application of the aforesaid sections in connection with domestic corporations.

The appellant, as a domestic corporation, filed with the Treasurer of Porto Rico, for purposes of taxation during the fiscal year 1922–23, a return of its property. The number of shares of stock was declared therein, the appellant valuing them at a par value of $100 each, amounting in all to $60,000. Also undivided profits amounting to $6,190, and the following additional property:

| | |
|---|---:|
| Cash on hand | $ 6,488.66 |
| Liberty Bonds | 90,537.26 |
| Stock of corporations | 11,850.00 |
| Mortgage credits | 16,000.00 |
| Promissory notes and other credits | 14,409.65 |
| Total | $139,245.57 |

There being no real property to deduct, the Treasurer simply assessed the aggregate stock and the undivided profits

of the corporation, amounting to $66,190, and levied a tax thereon of $1,323.80. This sum was paid under protest and its refund demanded by the present action.

The lower court overruled the complaint and based its judgment on the case of *The France and New York Medicine Co.* v. *Reily et al.,* 31 P.R.R. 617. In said case the Treasurer had levied on the plaintiff, as a domestic corporation, a certain tax on its paid in capital and undivided profits; but the plaintiff alleged that the Treasurer should have levied the tax on its tangible property in Porto Rico, and in that sense only was the value of an automobile owned by the corporation in Porto Rico taxable. Plaintiff further alleged that its main place of business was not in the island and that its real and personal property was located outside of Porto Rico.

Although in the case at bar the issue is entirely different, section 317 of the Political Code, by virtue of which the Treasurer acted when he levied the tax in each case, was the object of some consideration. As general principles we laid down the following:

"By reason of their peculiar organization corporations are subject to an additional burden because of the fact that in the taxation of their property there are elements which do not exist in the case of individuals and which can be reached for purposes of taxation without giving rise to any discrimination in the legal sense.

" 'The power of the State to tax the elements of taxable value set forth in the preceding paragraphs is not confined to a choice of a single element to the exclusion of the others. Undoubtedly the elements themselves represent to a greater or less degree the same basic constituents of the corporate assets. Each of these elements is, however, under some circumstances, an appropriate subject of taxation, and it is, no doubt, within the power of a state, when not restrained by constitutional limitations, to assess taxes upon them in a way to subject the corporation or the stockholders to what in effect amounts to double taxation. The elements themselves, being distinct, may be severally taxed, although the burden falls upon the same property in each case.' 26 R.C.L. 157 and 158.

"We admit that section 317 of the Political Code nominally re-

fers to taxes on the property of corporations, or the third of the elements referred to above, that is, corporate property, but considering the manner contemplated by section 317 of our Political Code, for taxing personal property, referring to intangible property, indirectly although expressly, the taxation reaches the capital stock of the corporation.

" 'There are many different methods of taxing the property of corporations. In general, real estate and tangible personal property of such a character that it has a fixity of situs in a particular place is subject to local taxation where it is situated, and the remainder of the property of the corporation is reached indirectly by a tax on the capital stock or on the ''franchise''. The intangible assets of a corporation may, however, be subjected to a property tax, and be valued by deducting the assessed value of the tangible property of the corporation from the aggregate value of its stock and bonds.' 26 R.C.L. 178.

"Thus it may be easily understood that the method employed by our system of taxation for the assessment of the property of domestic corporations includes real property and tangible personal property and the difference between the value of these properties and the value of the capital stock and bonds, plus the surplus and undivided profits, represents the intangible personal property subject to taxation, and it is, therefore, readily seen that the tax reaches expressly and indirectly the capital stock of a corporation.

" 'In some jurisdictions the value of the personal property, tangible and intangible, of a corporation is determined by deducting the cost of the real estate belonging to the corporation from the aggregate paid in capital stock.' 26 R.C.L. 179.

"The appellant insists, however, that the tax in question being exclusively a tax on the property of a domestic corporation, it is very clear that when the property of a corporation is permanently situated in a different state and there invested in connection with its business, it is unlawful to tax such property or anything that may seem to substitute or represent it. But these conclusions of the appellant are so absolute that they do not respond to the provisions of the Political Code which we have considered, nor are they in harmony with the jurisprudence applicable to such cases.

"It would seem at first sight that the system of assessment of domestic corporations in the manner prescribed by section 317 of the Political Code imposes a property tax, but it is really directed to the stock of the association and is a tax on the intangible per-

sonal property after deducting the real property and the tangible personal property. In that case it seems that the tax is not a tax on the property of the corporation, but is rather an excise tax. In this sense it is important to know under certain systems of taxation whether it is one or the other, because if the tax is simply an excise tax the capital stock of the corporation is merely the measure of the tax and then the manner in which the capital is invested and the situs of the property are immaterial; but if on the contrary the tax is a property tax, the stock of the corporation can not be taxed without deducting the value of the property situated in another state. See 26 R.C.L. 171.''

In this case, however, the appellant maintains, and so does the majority of this Supreme Court, that section 317 of the Political Code levies a tax on the property of the corporation, when a deduction should have been made of all property exempt from taxation by virtue of law.

The appellant furthers as an irrefutable argument, and the majority adopts it, that section 317 is comprised in chapter 1 of the Revenue Law under the heading ''Assessment of Property'' (Comp. of 1911, p. 549), and that the word ''capital'' as used in the law does not mean the ''shares of stock'' into which the paid in capital of the corporation is divided, but refers to all of the corporation's property.

We can dispose of the first part of the argument by saying that if the mere inclusion of section 317 in the chapter dealing with the ''Assessment of Property'' were sufficient to define its nature and to hold that because of such mere fact said section levies a tax on the property of the corporation, though not as an excise, how, then, could the inclusion of section 320 in the same chapter, levying a tax on the capital stock of banks held by the stockholders, be explained? The appellant seems to admit that the last named section establishes an excise tax; but it fails to explain how, and is not surprised at, the fact that in this particular the legislator included such provision in chapter I on the ''Assessment of Property'' when it levies a tax of the nature of a franchise. Neither can there be any explanation of the in-

clusion in the same chapter (chapter I) on the "Assessment of Property", of section 355 which provides for a tax on certain corporations, to be levied as a franchise tax.

In our opinion the legislator has done nothing abnormal in including section 317 in Title IX, Chapter I of the Political Code. Whatever the name given to the tax, there is always a method of assessment. "In considering the valuation of 'capital stock', it is first necessary to inquire whether that term, as used in a tax statute refers merely to the outstanding capital stock already issued or to the aggregate of the property of the corporation, i. e., its capital. * * * Another method of valuation under some statutes is to assess according to the actual or market value of the aggregate number of shares constituting the nominal capital stock." Cooley, Vol. 2, p. 1760–61. Beyond this we fail to find the special meaning sought to be given the words "value" and "taxation" for the purpose of determining the nature of the tax.

Therefore, the second part of the argument, where the appellant in referring to the sense to be given to the word "capital" expresses itself as follows in the brief, is of no greater importance: "Because Chapter I, Title IX, of the Political Code levies a property tax, we infer that the word 'capital' is used in this case as including all the property of the corporation." The name does not make the thing. Everything depends on the terms in which section 317 is drafted. "A tax on capital stock or capital may obviously be either a property tax or an excise tax, and the phraseology of the statute under which it is laid may determine which it is in the particular case. A tax on capital or capital stock is generally considered to be an excise rather than a property tax, although the contrary is held in some states." Cooley, Vol. 2, p. 1707–8.

Massachusetts offers a clear example of the determination and levying of a tax in the manner clearly established by section 317. The same author says: "In Massachusetts

a tax measured by the excess of the market value of all the corporate stock and over and above the property otherwise taxable, and one measured by the whole value of the corporate shares, have been held to be excises rather than taxes· on property.'' Cooley, Vol. 2, 1708–9. And as illustrative matter in regard to the two methods under which the tax may be levied on corporations, Cooley makes the following citation in note 99, p. 1708:

"If a tax on capital stock *eo nomine* makes the stock the direct subject of the tax and the term 'capital stock' is used as meaning the aggregate of the property and assets of the corporation, both tangible and intangible, it is sometimes held that the tax imposed is a property tax and not an excise, but if the capital stock is not *per se* the subject of the tax but instead is the standard taken for the purpose of fixing the amount of a tax imposed on the corporation, the tax is an excise and not a property tax. This is the conclusion arrived at by at least one investigator. See note in 58 L.R.A., p. 618, stating this as the conclusion of the author. As to the first of these two propositions, however, there is some dissent, it would seem. So where the tax upon capital stock is measured by the aggregate value of the shares, rather than by the value of the property of the corporation, it is generally held to be an excise rather than a property tax. Hamilton Mfg. Co. v. Massachusetts, 6 Wall. (U.S.) 632, 18 L. Ed. 904.''

In the State of New York we find the difference between such taxes as should be considered as property taxes and as excise taxes. In 1857 there was discussed a law on taxes demandable by local authorities—

"providing that the capital stock of every company liable to taxation should be assessed at its actual value, and taxed in the same manner as other personal and real estate in the county. This law was held to impose a tax upon the securities in which the capital was invested, and a tax assessed pursuant thereto upon the capital stock of a bank was held to be void to the extent in which the capital stood invested in non-taxable government obligations. New York *ex rel.* Bank of Commerce v. New York City & County, 2 Black, 620, 17 L. Ed. 451.''

"But the New York state tax upon corporations according to their capital stock is a tax upon their franchise or business, not a

property tax at all. It is unnecessary again to cite the authorities that establish this proposition beyond all controversy. And it must still be insisted, despite some decisions about to be noted, that in assessing this tax it is wholly unaffected by the circumstance that a part or all of the capital stock of the corporation subjected to it is invested in copyrights, patents, or patent rights, provided such corporation is otherwise within the statute.

"The case of People vs. Home Ins. Co., 92 N. Y. 328, Affirmed on error in 119 U.S. 129, 30 L. Ed. 350, 8 Sup. Ct. Rep. 1385, and on reargument in 134 U.S. 594, 33 L. Ed. 1025, 10 Sup. Ct. Rep. 593, holding that the investment of the capital stock in United States bonds entitled the corporation to no abatement of the tax, because it was wholly immaterial what the nature of the property represented by the capital stock was, since it was a standard to measure, and not the subject of the tax,—is altogether conclusive on that proposition. That case is in harmony with all the authorities, and beyond all criticism once it is admitted that the statute it passed upon imposed a franchise instead of a property tax."

"On the other hand, the Connecticut statute, which laid a tax of a specific per cent upon the cash capital on a given date of domestic corporations, was held to impose a franchise, and not a property tax, and therefore to be subject to no abatement for so much of the capital as was invested in United States bonds. Coite v. Connecticut Mut. L. Ins. Co., 36 Conn. 513."

"The court of appeals of Kentucky, in construing a statute of that state which required a board of valuation and assessment from a sworn statement to be furnished by every corporation and from such other evidence as it might procure to fix the value of the capital stock of each domestic corporation, and from the amount so fixed to deduct the assessed value of all tangible property assessed to it in the state or in the counties where it was situated, declaring the remainder thus found to be the value of the corporate franchise subject to taxation, said that, by the term 'capital stock' therein, the legislature meant to include the entire property, real and personal, tangible and intangible, all the assets and the franchise, embracing all these as an entirety, and, deducting the tangible property already taxed, treat the net balance as the value for the purposes of taxation of the franchise. Henderson Bridge Co. v. Com., 99 Ky. 623, 29 L.R.A. 73, 31 S.W. 486, Affirmed in 166 U.S. 150, 41 L. Ed. 953, 17 Sup. Ct Rep. 532." 58 L.R.A. pages 520–529–565–568.

"In the case of the capital stock of corporations the matter is more complicated and decisions vary more. No one will deny that

in one sense the capital stock of corporations is property, but whether or not a tax on the capital stock of corporations is equivalent to a general property tax is an entirely different question. In various jurisdictions it has been decided that the capital stock of corporations practically represent their property and that both things are for all purposes terms indiscriminately used. As regards the tax on the capital stock of corporations in general, other jurisdictions, however, have decided and the federal courts have confirmed such decisions, that such tax is not a property tax." Seligman, Essays on Taxation (8th Edition), p. 233.

Section 317 of the Political Code reads as follows:

"Section 317.—The personal property of institutions, corporations and companies incorporated under the laws of Porto Rico other than banking institutions having a share capital shall be assessed to such institutions, corporations and companies by the Treasurer of Porto Rico in the manner provided by this section. The actual present value of the capital of such corporations shall be ascertained by the Treasurer of Porto Rico from the sworn declarations of the presidents, directors or other chief officers of such corporations as required by section 319, and from such other reliable information as the Treasurer may have or secure, and the present actual value shall in no case be less than the value of the capital stock and bonds plus the surplus and undivided earnings of said institutions, corporations and companies, nor less than the market value of the real and personal property of said institutions, corporations and companies, including in personal property rights, franchises and concessions. From the valuation thus obtained shall be deducted the total valuation of real property of said corporations, as ascertained in accordance with the provisions of section 316, and the remainder shall be deemed to represent the personal property of said corporations for purposes of taxation." Comp. of 1911, page 558.

The statute prescribes the form of assessing the real property of domestic corporations. The capital stock is determined rather by the total value of the shares than by the value of the property of the corporation. The capital stock of the corporation, therefore, is not the matter *per se* subject to taxation, but is the standard used for the purpose of determining the amount of a tax levied on the corporation, and finally is an excise. Evident proof on which to

infer from the terms of the statute that such was the intent of the Legislature is the fact that the value of the capital stock in its strict meaning of shares is taken as a basis to distinguish such capital stock from the amount or value of the property of the corporation. 5 Fletcher, Corporations, p. 3413.

The reason for such distinction may be more clearly seen when another limitation is presented in the last part of section 317 in the sense that the measure of capital in shares shall not be less than the market value of the real and personal property. It would be difficult to understand this point in section 317, *supra,* unless we presuppose a term of comparison for the establishment of said limitation which is no other than the value of the shares, bonds and undivided profits as said section previously provides. Otherwise it would have been quite easy for the legislator, if his intention was to levy a tax on the property of corporations, to refer simply to their corporate property or assets.

It seems clear also that if in the method of valuation followed by section 317 as regards personal property, the only deduction allowed is that of real property, which is undoubtedly done to prevent double taxation, such property not existing in the assets of a corporation, there remains for taxation but the real value of shares and bonds plus the undivided profits. Such is the position of the appellant. The Treasurer, not optionally, but necessarily, followed the method prescribed by section 317 when he levied the tax in the form in which he did. On this point we must not lose sight of section 322 of the Political Code which makes clearer the intent of the Legislature, and which reads:

"Section 322.—Insular, municipal and local taxes upon capital, shares and property of the institutions, corporations, and companies, included within the meaning of this Title and upon shares in banks, engaged in business in Porto Rico, shall be payable at the office of the Treasurer, who shall pay, pursuant to law, the proportion of such municipal and local taxes due, to the proper officers of the re-

spective municipal districts or local divisions; and said institutions, corporations and companies are hereby authorized to retain the proportionate taxes upon capital shares from the earnings or dividends accruing to the owners thereof, or to cancel a proportion of said shares sufficient to pay said taxes. Insular, municipal and local taxes upon such institutions, corporations and companies shall be due in semiannual installment, and all penalties for delinquency and the liability to attachment, seizure and sale of property hereinafter provided shall apply to such institutions, corporations and companies in the same manner as to private individuals." Comp. of 1911, p. 560.

The little or no influence of this provision in connection with section 317 is mentioned. It has been sought to limit its effect to the tax levied on banks, but a superficial reading of section 322 reveals to any one that the provision also refers to corporations. As we have seen, the section commences thus: "Insular, municipal and local taxes upon capital, *shares* and property of the *institutions, corporations,* and *companies included within the meaning of this Title* and upon shares in banks * * *." (Italics are ours.) If this is the law in Porto Rico we fail to see how the case of *Home Savings Bank* vs. *Des Moines,* 205 U. S. 503, is applicable, since it interprets a very different statute of the State of Iowa providing (section 1322 Iowa Code) that shares of stock shall be assessed on banks and not on stockholders. It seemed logical that following the tenor of said law literally the Federal Supreme Court should reach the conclusion, as it did, that the tax was levied on the shares as property of the banking corporation and not on the stockholders; that the bank should pay the tax as a debt of its own without the right to reimbursement by the stockholders and as a property tax, deduction to be made of bonds declared exempt from taxation by the federal statutes. The contrary is provided in the same section of the Iowa Code in the case of the national banks. The tax is levied on the shares in the hands of stockholders. The tax is an excise and there is nothing to deduct on account of such invest-

ment as said bank may make in United States bonds. This is so declared in the case of *Des Moines National Bank* vs. *Thomas Fairweather,* 263 U. S. 103. Although this case is cited by the appellant, we do not see how it can help it for it rather fully favors the position of the appellee.

Importance has also been given to the word "personal" used in section 317, in order to provide another element for the theory that said section levies a tax on all the tangible property of corporations. It seems that to this last word the meaning has been given which it has of its own nature, that is, of tangible property. However, personal property is tangible property by virtue of law and among others there are included as such the shares on banks or commercial associations, industry, etc. Sections 338 and 339 of the Civil Code.

In this connection no ground can be found to maintain that the mere use of the word "personal" is reason to say the tax dealt with in section 317 is a property tax. Moreover, if we can not deny that said section establishes the measure of the capital stock in shares, bonds and undivided profits for the purpose of regulating the tax, shall "not be less than the market value of the real and personal property," there can be no doubt, by reason of this last distinction of the law itself, that the personal property referred to by the statute is the tangible property represented by the aggregate of the shares of stock. If there is any real property that is the only deduction allowed by the statute, like in Massachusetts as we have seen, and in the remainder the tax includes the capital in shares. Otherwise the tax is levied entirely on the shares and undivided profits of the corporation as was done in this case, it not being the duty of the Treasurer to deduct other property stated in the return, since the money invested in such property is immaterial because, as regards effect, the case was one of collection of a franchise tax.

It has likewise been suggested that chapter II of the

Political Code deals exclusively with taxes of the nature of excises, and that if section 317, *supra*, establishes an excise, the legislator should have included it in said chapter II. The argument is so trivial that it does not require serious consideration. It is sufficient to say that chapter II refers exclusively to certain excises on liquors, tobacco and other articles properly chosen because they are not an essential part of the daily consumption of the island, but are included as articles of luxury and comfort; but the word "excise" has a more general meaning and it would seem quite strange, not to say ridiculous, for the legislator to have placed a franchise tax on corporations beside, for example, a tax on perfumery. The inheritance tax is also an excise. Cooley, vol. 1, p. 133, and notwithstanding, it is not classified by the Political Code among the excises enumerated in the afore-said chapter II.

It does not seem to have happened in this case, but un-doubtedly under the system of considering the tax on do-mestic corporations or on their franchises as an excise, the legislator avoids the peril of acquisition of tax-free bonds shortly before making the return and their redemption shortly afterwards, thus to avoid aiding in the support of the government. Of course, even in the case of a tax on the property of a corporation, such a thing can not be done—58 L.R.A. 569—but if the law prescribes a clear and simple method, why not follow it?

For all of the foregoing reasons the judgment of the lower court should have been affirmed.